**Alfred J. QUASTI, Jr., Appellant**

v.

**NORTH PENN SCHOOL DISTRICT and Marianne Cleary, Coordinator of Transportation, North Penn School District, in her official capacity and not individually.**

Commonwealth Court of Pennsylvania.

Submitted June 30, 2006.

Decided Sept. 7, 2006.

Joseph E. Bresnan, Ambler, for appellant.

John T. Dooley, Lansdale, for appellees.

BEFORE: COLINS, President Judge, COHN JUBELIRER, Judge, McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Alfred J. Quasti, Jr. (Appellant) appeals from an order of the Court of Common Pleas of Montgomery County (trial court), denying his petition for a preliminary injunction seeking to compel the North Penn School District (the District) to provide busing for Appellant's children to and from the Mary, Mother of the Redeemer Elementary School (MMR). We affirm.

The following facts were submitted by stipulation of the parties at the hearing before the trial court on August 16, 2005. Appellant is an individual who resides within the District at 120 Claremont Drive, Lansdale, Pennsylvania. Appellant is a parent of two students currently enrolled at MMR, a non-profit school. Appellant's oldest child has attended MMR since it opened in September of 2003. Throughout the 2003–2004 and 2004–2005 school years, Appellant's child was transported to and from MMR by buses provided by the District.

As a general rule, the District is reimbursed by the Commonwealth for any expenditure it undertakes in transporting children to and from school. However, the District is not reimbursed for the transportation costs of a student who resides within one and one-half (1½) miles [1] of his/her school provided that student has ac-

1. Section 1366 of the Public School Code of 1949 (Public School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 13–1366, provides as follows:

cess to a District proposed student walking route [2] certified by the Pennsylvania Department of Transportation (PennDOT) as non-hazardous.[3] In determining whether a District proposed student walking route is hazardous, PennDOT examines the school-time traffic patterns, pedestrian accident history, availability of crosswalks/crossing guards and general formation of the roadways a student would have to walk along or cross in traversing the student walking route.[4] If PennDOT certifies a student walking route as non-hazardous, and the District disagrees with that determination, the District may elect to provide bus transportation despite PennDOT's conclusion,[5] but it will receive no compensation from the Commonwealth for said transportation.

In anticipation of MMR's opening, the District submitted proposed student walking routes to PennDOT. During the first year of MMR's operation, the District bused Appellant's child and those similarly situated, as PennDOT had not yet completed its inspection. On November 24, 2004, PennDOT issued its report certifying the proposed walking route as non-hazardous. Rather than discontinue bus service during the course of the school year, the District responded to parental concerns by continuing all busing.

The walking route at issue covers approximately one mile, winding through a series of neighborhoods with existing sidewalks, but requiring the crossing of six intersections that will not be supervised by crossing guards. The walking route then continues through a developed subdivision, namely, Stony Court, to a point at which the end of a cul-de-sac abuts the rear of

Where, by the terms of this act, or any other act, any distance is specified between the residence of any pupil and any public school to be attended by him, or any transportation is provided for within or beyond any particular distance, in computing such distance no allowance shall be made for the distance that the dwelling house of the pupil is situated off the public highway. All such distances shall be computed by the public highway from the nearest point where a private way or private road connects the dwelling house of the pupil with the highway to the nearest point where said highway touches the school grounds of the school to which the pupil has been assigned.

2. PennDOT's regulations define "[s]tudent walking route" as "[t]he system of streets, shoulders, sidewalks and crosswalks used by school students when walking between their home and their school or school bus stop, officially designated by the school district or, where no official route has been designated, used by school students because of the unavailability of a reasonable alternate route." 67 Pa.Code § 447.2.

3. Section 1362 of the Public School Code provides, in pertinent part:

The free transportation of pupils, as required or authorized by this act, ... may be furnished ... when the total distance which any pupil must travel by the public highway to or from school, ... does not exceed one and one-half (1.5) miles ... and when the highway, road, or traffic conditions are not such that walking constitutes a hazard to the safety of the child, as so certified by the Department of Transportation. The Department of Transportation shall take into account the presence of sidewalks along the highway, but such presence or lack thereof shall not be controlling and the department shall consider all relevant safety factors in making its determination as to whether or not walking constitutes a hazard to pupils ...

24 P.S. § 13–1362.

4. 67 Pa.Code § 447.4.

5. The North Penn School Board Policy 3541.31 allows for the transportation of students when the District's coordinator of transportation concludes that a walking route is hazardous, even if PennDOT reaches a contrary conclusion.

MMR property. It is at this point where the children using the walking route enter the MMR grounds by proceeding over a loose gravel pathway within an area identified in the approved land development plan as an "emergency access" easement. The gravel path is believed to have been created by MMR personnel to gain access to the front of the MMR building from the Stony Court cul-de-sac.

In reliance upon PennDOT's finding, Marianne Cleary (Appellee Cleary), the District's transportation coordinator, in a letter dated March 1, 2005, informed Appellant as well as other parents of children enrolled in MMR, that, effective September, 2005, the District would discontinue its bus service for those students of MMR who could utilize the walking route. In response, Appellant wrote to PennDOT requesting that it reconsider its decision and conduct a new survey of the walking route. Appellant included with his letter a copy of MMR's previously approved development plans, which show the "emergency access" designation where the gravel path is located. Appellant opined in his letter that the use of the gravel path as a walking route for an estimated 100 or more students would be inconsistent with its "emergency access" designation. Appellant therefore proposed that any student walking route should lead to the front of the school property, where two paved points of ingress/egress exist.[6]

By letter dated March 30, 2005, PennDOT informed Appellant that a dispute over the propriety of the walking route must be resolved with the District and, likewise, that any request for a re-survey of the walking route must be initiated by the District. Having been so notified, Appellant wrote to Appellee Cleary, requesting that the District submit a request for a survey of a student walking route that led to the front of the MMR school grounds. Appellant's request was denied and Appellant was so informed by John Dooley, the District's solicitor, in a letter dated May 10, 2005.

Unsatisfied with this response, Appellant requested that the District's solicitor reconsider this decision. Appellant included with his letter a copy of a June 28, 2005, letter of Gerald F. Grover (Chief Grover), Montgomery Township's Director of Fire Services, who stated, with reference to the rear of the MMR property at Stony Court, "[t]he emergency access road is not, and never was, intended to be used by students. It was intended for emergency access of public safety vehicles only. Use by emergency vehicles is the sole purpose and reason the road was included in the land development plan approved by the Board of Supervisors." (R.R. at 46).

Due to the District's solicitor's failure to respond to his reconsideration letter, Appellant re-submitted his request in late July, 2005. Having received no response to either letter, Appellant instituted the within cause of action on August 9, 2005, approximately one month before the start of the 2005–2006 school year, by filing a complaint in mandamus and petition for preliminary injunction. Appellant sought an order from the trial court compelling the District to continue transporting his children as it had done during the prior two school years. Following a hearing, the trial court issued an order denying Appellant's request for preliminary injunctive relief. Appellant thereafter filed a notice of appeal with the trial court.

---

6. It is undisputed that any proposed alternative walking routes with a point of ingress/egress at the front of the school grounds would be deemed hazardous by PennDOT and would therefore require continued busing of Appellant's children.

Pursuant to Pa. R.A.P.1925(b), the trial court ordered Appellant to serve upon it a concise statement of matters complained of on appeal. Appellant complied, and on March 31, 2006, the trial court issued an opinion in support of its order. In its opinion, the trial court found that Appellant's allegation that the walking route was improper and contrary to law was without merit. The trial court found that Appellant had offered no evidence demonstrating that the District had acted outside of its delegated authority by way of bad faith, official misconduct or fraud. Thus, the trial court found that Appellant had failed to carry the heavy burden required when requesting a mandatory injunction.

On appeal, Appellant first argues that the trial court erred as a matter of law in denying its request for preliminary injunctive relief, as the express language of Section 1366 of the Public School Code applies only to public schools. Alternatively, if Section 1366 does apply to private schools, Appellant argues that the District's reliance upon said Section to deny Appellant's children bus transportation is based upon a misconception of the law and that Sections 1362 and 1366 are antiquated and in need of revision. We disagree with each of Appellant's contentions.

■■■ However, we begin by noting that our scope of review of a trial court order granting or denying a preliminary injunction is limited to examining the rec-

ord for an abuse of discretion. *Summit Towne Centre, Inc. v. The Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 828 A.2d 995 (2003). Only if it is clear that no "apparently reasonable" grounds exist to support the trial court's disposition will we interfere with its decision. *Roberts v. Board of Directors of the School District of the City of Scranton*, 462 Pa. 464, 469, 341 A.2d 475, 478 (1975). Further, for a mandatory injunction commanding a positive act to issue, a much stronger case is required. *Zebra v. School District of City of Pittsburgh*, 449 Pa. 432, 296 A.2d 748 (1972). The party seeking the injunction must establish six prerequisites, the failure to establish any one of which requires a court to deny the request for the injunction.[7]

■■■ We must further note that the power granted to school districts under Sections 1361 and 1366 of the Public School Code is "plenary, absent a showing of bad faith or abuse of discretion." *Roberts*, 462 Pa. at 470, 341 A.2d at 479. Only if a school district is shown to have transcended its limits of legal discretion is it amenable to the injunction process of a court of equity. *Landerman v. Churchill Area School District*, 414 Pa. 530, 200 A.2d 867 (1964); *Abrahams v. Wallenpaupack Area School District*, 54 Pa.Cmwlth. 637, 422 A.2d 1201 (1980). The burden of showing such an abuse is a heavy one, resting with the party who seeks the in-

7. The prerequisites the party seeking the preliminary injunction must establish are:
   (1) an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages;
   (2) greater injury would result from refusing an injunction than from granting it, and, the issuance of the injunction will not substantially harm other interested parties;
   (3) an injunction will properly restore the parties to their status as it existed prior to the alleged wrongful conduct;
   (4) the activity the petition seeks to restrain is actionable, the right to relief is clear, and success on the merits is likely;
   (5) the injunction is reasonably suited to abate the offending activity; and,
   (6) an injunction will not adversely affect the public interest.
   *Lee Publications, Inc., v. The Dickinson School of Law*, 848 A.2d 178, 189 (Pa.Cmwlth.2004).

junction. *Zebra,* 449 Pa. at 437, 296 A.2d at 751.

■ Appellant's first argument, that Section 1366 does not apply to private schools, is without merit. Appellant's argument requires reading Section 1366 without reference to any other section of the Public School Code. However, the Statutory Construction Act, 1 Pa.C.S. §§ 1501–1991, specifies that the separate sections within a statute are to be read with reference to one another. This Court has held that, "[w]hen construing one section of a statute, a court must read that section not by itself, but with reference to, and in light of, the other sections because there is a presumption, under 1 Pa.C.S. § 1922(2), that in drafting the statute, the General Assembly intended the entire statute to be effective." *Harburg Medical Sales Company v. Bureau of Workers' Compensation (PMA Insurance Company),* 784 A.2d 866, 869 (Pa.Cmwlth.2001).

While Section 1366 makes no reference to public or private schools, Section 1361 requires a school district to "make identical provision for the free transportation" of private school students as is provided to public school students. 24 P.S. § 13–1361. We believe that when Section 1366 is properly read with reference to Section 1361, it becomes clear that the General Assembly would have intended a construction that resulted in the equal treatment of privately and publicly schooled children. We therefore reject Appellant's argument that Section 1366 applies only to public schools.[8]

■ Next, Appellant argues that in order for a student walking route to be in compliance with Section 1366, it must take students to a paved "generally accepted" point of ingress/egress on school grounds. Failing to construe Section 1366 in such a way, Appellant argues, would allow a school district to propose a student walking route to any point on school grounds, without regard to how students are to reach the school building. Again, we disagree.

A careful reading of the record reveals nothing more than Appellant's general disagreement with the District's judgment and decision. Attempting to transform his disagreement into a legal argument, Appellant argues that Section 1366 is ambiguous and in need of interpretation. In support of his argument, Appellant notes that a literal interpretation of the statutory language that requires a school district to measure a student walking route "to the nearest point where said highway touches the school grounds," would allow a school district to propose the shortest student walking route without "consideration of the accessibility to the [school] property at that point." (Appellant's Brief at 16).

Appellant then notes that such a walking route could be certified non-hazardous by PennDOT, since in assessing the hazardousness of a walking route, PennDOT only surveys the compatibility of automobile and pedestrian traffic. Appellant thus concludes that Section 1366 should be read as requiring a student walking route to lead students to an improved point of ingress/egress.

Once more, we are guided by the principles set forth in the Statutory Construction Act. Section 1921 of this Act specifies that the object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921. Section 1921 also specifies that the letter of a statute is only to be disregarded when the words of

---

**8.** As to Appellant's argument that Sections 1362 and 1366 are antiquated and in need of revision, such issues are more properly presented to our General Assembly.

the statute are not explicit. *See* 1 Pa.C.S. § 1921(b), (c). Lastly, Section 1922 notes that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable. *See* 1 Pa. C.S. § 1922(1).

In arguing that the statute is ambiguous, Appellant describes hypothetical student walking routes that, despite being within the letter of the law, are outside the spirit of the law. Appellant offers extraordinary examples in support of his argument, where a student walking route reaches the school grounds, but confronts an obstruction such as a fence, "a water filled retention basin, or any number of hypothetical but by no means fanciful impediments." (Appellant's Brief at 16).

Despite Appellant's efforts to analogize the walking route to a hypothetical walking route that leads children to a point that offers limited accessibility to the school building, we do not believe his efforts are successful. The walking route at issue herein does not lead Appellant's children to a point of limited or unreasonable access to the school building. Rather, it leads his children to a gravel path, believed to have been built by MMR personnel, that runs from the intersection of Stony Court and MMR grounds to the MMR school building. Furthermore, as the pictures of the gravel path entered into evidence by Appellant exhibit, the path runs for a significantly short distance before depositing the children onto a paved sidewalk in front of the MMR school building. To argue that the walking route is contrary to the intention of the General Assembly, when it brings children from "the nearest point where said highway touches the school grounds" to the school building by way of a short gravel walking path, is without merit.

Appellant next argues that because the gravel walking path shares space with an "emergency access" easement, the walking route is improper and contrary to the Public School Code. Appellant notes that PennDOT regulations do not include a gravel path in the definition of a "[s]tudent walking route." Appellant asserts that the definition "references various forms of public rights of way, and by definition excludes fields, parking lots, private properties, and obstructions." (Appellant's Brief at 17). Appellant is correct in this regard.

Nevertheless, we agree with the trial court that that gravel path is not a part of the walking route. The trial court found that "[t]he length or the method by which the student gets [from the termination point of the student walking route] into the school building is not dictated by the Statutes and is left to the operators of the school to determine." (Opinion of Trial Court at 10). As indicated in Section 1366 of the Public School Code, a student walking route runs from the point at which a private way or private road connects a student's house with the public highway to the nearest point where a public highway touches the school grounds. As the gravel path is actually part of MMR school grounds, it is not a part of the walking route.

Additionally, the fact that the gravel path may share space with an "emergency access" easement does not render the walking route contrary to the law. As explained above, Section 1366 leaves to the school's discretion how a student gains access to the school building from the junction of the school grounds and the student walking route. Furthermore, Chief Grove's opinion that the "emergency access" easement "is not, and never was, intended to be used by students," is not dispositive of this issue. (R.R. at 31). It has long been established in this Commonwealth that the owner of the servient es-

tate retains all rights to use the property provided said uses do not unreasonably interfere with the rights granted to the owner of the dominant estate. *Taylor v. Heffner*, 359 Pa. 157, 58 A.2d 450 (1948). There has been no assertion that the students' use of the gravel path unreasonably interferes with an emergency vehicle's ability to access the property, and such an assertion would be without merit.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 7th day of September, 2006, the order of the Court of Common Pleas of Montgomery County is hereby affirmed.

