Timothy L. WATTS

v.

**MANHEIM TOWNSHIP SCHOOL DISTRICT, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2013.

Decided Jan. 7, 2014.

Reargument En Banc Denied Feb. 26, 2014.

---

**5.** Claimant's Brief at 7.

David M. Walker, Lancaster, for appellant.

Timothy J. Reese, Lancaster, for appellee.

BEFORE: SIMPSON, Judge, and COVEY, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge SIMPSON.

Manheim Township School District (School District) appeals from an order of the Lancaster County Court of Common Pleas (trial court)[1] granting a permanent injunction and directing the School District to resume bussing services for Timothy L. Watts' (Watts) child, C.W., to and from Watts' residence to the Manheim Township Middle School (Middle School) pursuant to Section 1361 of the Public School Code of 1949 (School Code).[2] At issue is whether a resident pupil is entitled to transportation services to and from two different residences within the same school district.

The School District asserts the School Code does not require it to provide transportation to a resident pupil to and from more than one location within the School District, and the trial court misinterpreted and misapplied the School Code, regulations, and applicable Pennsylvania case law in concluding otherwise. Thus, the School District contends the trial court erred in finding that Watts established a clear right to relief under the School Code and was therefore entitled to injunctive relief. Discerning no error, we affirm.

## I. Background

The relevant facts are not in dispute, but the factual scenario presents a case of first impression. Watts is the father of C.W., who is a student at the Middle School in the School District. Watts and his ex-wife share equally-divided legal and physical

---

1. The Honorable Jeffrey D. Wright presided.

2. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 13–1361.

custody of C.W. with C.W. spending alternating weeks with each parent. The custody arrangement is by court order. Both custodial parents reside in the School District but on different bus routes.

Prior to the 2011–2012 school year, the School District provided transportation to eligible students to and from multiple locations, including different residences of divorced and separated parents. During the 2010–2011 school year, the School District transported approximately 400 students to multiple locations. Of that number, 50 to 75 students were subject to joint physical custody agreements. The School District could not determine how many of those students were involved in equally-divided physical custody arrangements. In an attempt to reduce operating expenses, when adopting the 2011–2012 school year budget, the School District's Board of School Directors (Board) approved cost-reduction measures that included eliminating transportation of students to and from multiple locations.

To allow for the transition to the new system, the School District did not strictly enforce the policy in the 2011–2012 school year. During the 2011–2012 school year, C.W. continued to receive transportation to the Middle School from both of his parents' homes. When adopting the 2012–2013 school year budget, the Board decided to further reduce transportation costs by strictly enforcing the policy of eliminating transportation to and from multiple locations. In furtherance of the new policy, the School District informed Watts it would no longer transport C.W. between his home and the Middle School. The School District continued to provide C.W. with transportation to and from his mother's residence. The School District notified Watts that C.W.'s bus stop for the 2012–2013 school year would be the bus stop servicing his ex-wife's residence. Reproduced Record (R.R.) at 42a.

The School District has a bus route that serves Watts' neighborhood and provides transportation to and from the Middle School. The bus has unassigned seats and could accommodate C.W. without adding an extra stop. Watts' employment precludes him from driving C.W. to school, and C.W.'s mother's home is approximately two miles away from his residence and would require C.W. to traverse a heavily trafficked highway to reach his approved stop. Watts hired an individual to transport his son to and from school on the weeks that he has custody.

In an attempt to have bussing services to his home restored, Watts contacted the School District administration, appeared before the Board, and wrote a letter to the School District Solicitor, all to no avail. In November 2012, Watts filed a complaint against the School District seeking a writ of mandamus, a declaratory order, and injunctive relief. Additionally, Watts filed a petition for preliminary injunction.

The trial court conducted a hearing. The parties stipulated to the proposed testimony offered by Watts and the School District. Upon consideration of Watts' petition for injunctive relief, verified testimony, and the parties' briefs, the trial court granted Watts' request for a preliminary injunction and directed the School District to resume bussing services for C.W. to and from Watts' residence to the Middle School. Shortly thereafter, the trial court amended this order by granting a permanent injunction.

In reaching this decision, the trial court relied heavily on *Wyland v. West Shore School District,* 52 A.3d 572 (Pa.Cmwlth. 2012), stating:

> Under *Wyland,* a student who is subject to an equally split shared physical custody agreement can be a resident pupil of

more than one school district. Based upon the *Wyland* court's reasoning, it is only logical to conclude that C.W. can maintain two residences within a single district.

Tr. Ct., Slip. Op., 5/8/13, at 7. The trial court emphasized the fact that there is no primary residence as C.W. spends 50 percent of his time residing with each parent pursuant to the joint physical custody arrangement.

The trial court determined the fact that Watts maintains a residence in the School District is sufficient to confer resident pupil status on C.W., and Watts need not demonstrate that his home is C.W.'s primary residence or domicile. Consequently, the trial court determined the School District is statutorily required to provide transportation for C.W. to the Middle School to and from both parents' homes. The trial court limited its holding to:

> A situation wherein both parents live in the school district, the student is subject to an equally split joint legal and physical custody agreement, and a bus from the student's school has available seats, already serves both homes and could accommodate the student without any further cost or adding an extra stop.

*Id.* at 9.

■ From this decision, the School District appealed to this Court.[3] In addition to the briefs filed by the School District and Watts, the Pennsylvania School Boards Association (PSBA) filed a friend-of-the-court brief regarding the impact of the case on schools across the Commonwealth and supporting the School District's position.

## II. Issues

In this appeal, the School District contends the trial court erred in finding the School Code requires the District to provide transportation to a resident pupil to and from more than one location within the School District. According to the School District, the School Code merely requires the School District to provide transportation to a resident pupil, which it is doing. The implementation of the School District's transportation protocol to limit transportation to and from only one location falls within the School District's permitted discretion. The School District argues that the trial court, in determining this protocol exceeded the School District's discretion, misinterpreted and misapplied the School Code, its implementing regulations, and applicable Pennsylvania case law regarding the School District's duty to transport. Notably, the trial court erred by relying on *Wyland,* which is distinguishable legally and factually from this case. Finally, the School District maintains, the trial court erred in determining Watts has a clear right to relief under the School Code and was therefore entitled to injunctive relief.

## III. Discussion

### A. School Code

First, the School District contends the trial court erred when it interpreted the School Code, regulations, and applicable Pennsylvania case law to impose a requirement upon the School District to provide transportation to resident pupils to and from multiple locations within the School District.

The School District agrees that C.W. is a "resident pupil" of the School District, as

---

3. When reviewing the grant or denial of a permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law. *Buffa-*

*lo Twp. v. Jones,* 571 Pa. 637, 813 A.2d 659 (2002); *Johnson v. Allegheny Intermediate Unit,* 59 A.3d 10 (Pa.Cmwlth.2012).

that term is used in Section 1361 of the School Code, 24 P.S. § 13–1361. Pursuant to Section 1361, the School District provided and is continuing to provide C.W. with transportation. In accordance with the new transportation protocol, the School District is now transporting C.W. to and from only one residence—his mother's. According to the School District, there is no specific legal authority, or affirmative duty or obligation, requiring it to implement its transportation protocol in a manner that requires resident pupils to be transported to and from multiple locations within one school district. Moreover, the School District is under no duty to accommodate the particular, varying and ever changing domestic arrangements made by pupils' parents and guardians.

The School District asserts, once a school district elects to provide free transportation, Section 1361 merely requires school districts to provide such services to any "resident pupil" to and from school. However, neither the applicable statutory provisions, nor any regulations or case decisions contain any requirement that school districts must provide transportation services to particular locations or residences within a school district, to more than one location or residence within a school district, or otherwise in a manner that is most convenient or preferable for parents and resident pupils. The cases relied upon by the trial court and Watts, even when read in concert, do not create such a mandate. The manner in which the School District chooses to provide transportation services to its resident pupils falls within its discretionary powers. Thus, the School District contends, by continuing to provide transportation to C.W., its resident pupil, to and from his mother's residence, it is meeting its transportation obligations and is not violating any statutory mandate.

Similarly, PSBA advances no school district has a legal duty to provide transportation to pupils to and from multiple residences or locations within the school district. The School District is under no legal obligation to make special provisions for an individual student's transportation beyond the statutory requirements of Section 1361, that is, to provide resident students with transportation to and from the school in which they are lawfully enrolled.

Watts counters the trial court correctly determined that when a school district elects to provide free transportation, it must then provide transportation services to "any resident pupil" in the district in which the pupil is lawfully enrolled. 24 P.S. § 13–1361. This duty logically extends to pupils who have two equal residences within the School District.

Watts argues the School District cannot ignore the definitions of "resident pupil" reached by the courts. Specifically, this Court applied the rules of statutory construction and interpreted "resident pupil" to mean "any lawfully enrolled student of a public or nonpublic school described therein who lives in the school district in question." *Unionville–Chadds Ford Sch. Dist. v. Rotteveel,* 87 Pa.Cmwlth. 334, 487 A.2d 109, 112–113 (1985). Likewise, the Pennsylvania Supreme Court explained at some length that "residence" does not mean a primary residence or domicile under the School Code. *In re Residence Hearing Before Bd. of Sch. Dirs., Cumberland Valley Sch. Dist. (Thane),* 560 Pa. 366, 744 A.2d 1272 (2000). More recently, in *Wyland,* this Court applied these same definitions and determined a child had two legal residences—one within the school district and one outside.

Watts submits that current law merely requires that the child resides with him, as C.W. does here, and is enrolled in a school within the district. To conclude otherwise

ignores case law and the reality of shared physical custody of children. By stopping transportation services to and from Watts' residence, the School District is violating the clear mandate of Section 1361. The trial court did not err in directing the School District to resume bussing service to Watts' residence.

Article XIII of the School Code and Chapter 23 of Title 22 of the State Board of Education Regulations[4] (regulations) govern pupil transportation. Pursuant to Section 1361(1) of the School Code, school boards "may" elect to provide free transportation to *any resident pupil, to and from the ... school in which he is lawfully enrolled,* provided that such school is not operated for profit and is located within the district boundaries or outside the district boundaries at a distance not exceeding ten miles by the nearest public highway." 24 P.S. § 13–1361(1) (emphasis added).

Additionally, under Section 1331 of the School Code, 24 P.S. § 13–1331, when there is:

> no public school with the proper grades in session *within two miles* by the shortest public highway *of the residence of any child in a school district* [of a particular size or within a municipality of a particular size] ..., such child shall be furnished *proper transportation* at the expense of the school district to and from a school with the proper grades.

24 P.S. § 13–1331 (emphasis added).

Once a school board elects to provide pupil transportation, the school board is responsible for all aspects of pupil transportation, including establishing routes, schedules and loading zones; adopting policies; and, establishing criteria and procedures governing transportation services. 22 Pa.Code § 23.4. The school board must

provide transportation consistent with the policy of the school district. 22 Pa.Code § 11.11(a)(2). Additionally, a school board "may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs...." Section 510 of the School Code, 24 P.S. § 5–510. However, such policies, rules and regulations must be consistent with the statute under which they are promulgated. *See Joyce Outdoor Adver., LLC v. Dep't of Transp.,* 49 A.3d 518 (Pa.Cmwlth.2012).

■ The School District asserts neither the School Code nor its regulations contain any requirement that school districts must provide transportation services to particular locations or residences within a school district or to more than one location or residence within a school district. Section 1361 merely provides for transportation to and from the assigned school. Although Section 1361 does not expressly state transportation to and from the pupil's residence or other location, the General Assembly clearly intended transportation services to be provided between the pupil's school and residence. The requirement is embodied in the term "resident pupil" within Section 1361.

Although the School Code and regulations do not define "resident," the courts of this Commonwealth interpret this term in accordance with the principles of statutory construction. For instance, in *Unionville–Chadds Ford,* we determined the General Assembly "intended the term, resident pupil, to mean simply any lawfully enrolled student of a public or nonpublic school described therein who lives in the school district in question." 487 A.2d at 112. Thus, a student need only live in the school district to trigger a district's duty to transport the student. *Id.*

---

4. 22 Pa.Code §§ 23.1–23.69.

Additionally, in *In re Residence Hearing,* our Supreme Court held that the term "resides" for the purposes of enrollment and education services under Section 1302 of the School Code is "a factual place of abode evidenced by a person's physical presence in a particular place." 560 Pa. at 371, 744 A.2d at 1275. There, the school district argued unsuccessfully that children who moved with their mother into a townhouse to be closer to their private school in the district, while maintaining a family residence elsewhere, were not residents of the school district. The Supreme Court specifically rejected the interpretation that "resides" or "resident" means " 'primary residence' " and "having an import in the nature of 'domicile.' " *Id.* at 370, 744 A.2d at 1274. Thus, the Court held "the term refers to a *place where the custodial parent maintains a residence,* and ... *it need not be a primary residence or domicile.*" *Id.* (emphasis added).

Significantly, in *Wyland,* addressed more fully below, this Court determined "the phrase 'resident pupils' in Section 1361 of the School Code means students who reside in a school district, that is, live in a school district." *Id.* at 579. We concluded the pupils of separated parents, who lived in two different school districts, were "resident pupils" of both school districts. *Id.*

■ Although these cases do not address whether school districts must provide transportation services to more than one residence or location in the same district, they hold a child can have more than one residence for purposes of the School Code. *In re Residence Hearing; Wyland.*

Notwithstanding the fact that a child can have two residences for purposes of the School Code, the School District insists it does not have a duty to provide transportation services to more than one residence or location in the district. It maintains that transportation to and from one location—C.W.'s mother's residence—fully satisfies its transportation obligations under the School Code. However, the School District's interpretation of its transportation duties requires reading Section 1361 without reference to any other section of the School Code, which is contrary to the tenets of statutory construction.

Pursuant to the Statutory Construction Act of 1972,[5] separate sections within a statute are to be read with reference to one another. This Court consistently holds:

> When construing one section of a statute, a court must read that section not by itself, but with reference to, and in light of, the other sections because there is a presumption, under 1 Pa.C.S. § 1922(2), that in drafting the statute, the General Assembly intended the entire statute to be effective.

*Quasti v. N. Penn Sch. Dist.,* 907 A.2d 42, 47 (Pa.Cmwlth.2006) (quoting *Harburg Med. Sales Co. v. Bureau of Workers' Comp. (PMA Ins. Co.),* 784 A.2d 866, 869 (Pa.Cmwlth.2001)).

There are several sections of the School Code that expressly deal with transportation of students. Of particular import here, Section 1362 of the School Code, 24 P.S. § 13-1362, provides, in relevant part:

> The free transportation of pupils, as required or authorized by this act, or any other act, may be furnished by using either school conveyances, private conveyances, or electric railways, or other common carriers, *when the total distance which any pupil must travel by the public highway to or from school,* in addition to such transportation, *does not exceed one and one-half (1 1/2) miles,*

5. 1 Pa.C.S. §§ 1501–1991.

and when stations or other proper shelters are provided for the use of such pupils where needed, and when the highway, road, or traffic conditions are not such that walking constitutes a hazard to the safety of the child, as so certified by the Department of Transportation.

Section 1366 of the School Code, 24 P.S. § 13–1366, directs how to measure the distance between "the residence of any pupil and any public school to be attended by him." Specifically:

All such distances shall be computed by the public highway from the nearest point where a private way or private road *connects the dwelling house of the pupil* with the highway to the nearest point where said highway touches the school grounds of the school to which the pupil has been assigned.

24 P.S. § 13–1366. Section 1366 removes from the computation the distance between the pupil's "dwelling house" to the public road. *Id.*

■ Section 1361, when read in conjunction with Sections 1362 and 1366, as well as the cases interpreting "residence," requires school districts to provide transportation services to and from a child's *residence* or a designated bus stop within one and one-half miles from the residence. As discussed above, a child can have more than one legal residence under the School Code. *In re Residence Hearing; Wyland.* It therefore follows that where, as here, a child has two residences within a school district, the school district must provide transportation services accommodating both residences. To do this, the school district must provide service to and from both residences or at a designated bus stop that satisfies the distance and hazard restrictions of Section 1362 for both residences. A school district cannot fulfill its transportation obligation by merely designating one parent's residence as the sole bus stop without any consideration of the child's other residence. To conclude otherwise would deprive the child of free transportation during alternate periods of custody.

Here, there is no dispute that C.W. is a "resident pupil" to whom the School District owes a duty to provide free transportation. Because C.W.'s parents share joint and equal custody by court order, see R.R. at 70a, C.W. has two residences within the district. Consequently, the School District has a duty to provide transportation services accommodating both residences.

Although the School District is not required to provide door-to-door transportation service, it must provide a bus stop within one and one-half miles from the pupil's residence. *See* 24 P.S. § 13–1362. Watts' ex-wife's residence is located approximately two miles from Watts' home. R.R. at 66a. Consequently, this location fails to satisfy the mandate of Section 1362 because the School District cannot require C.W. to travel more than one and one-half miles from his father's residence to access the bus.[6] *See* 24 P.S. § 13–1362; 24 P.S. § 13–1366. By eliminating transportation to and from Watts' residence and by designating a bus stop more than 1.5 miles from Watts' home, the School District violated its transportation mandate.

### B. School District's Discretion

Next, the School District contends the trial court erred in finding that the School District's implementation of its transporta-

---

6. Additionally, Watts asserts the walking route poses a hazard to the safety of the child, *see* R.R. at 66a, but the record contains no certification by the Pennsylvania Department of Transportation to this support this claim. *See* Section 1366 of the School Code, 24 P.S. § 13–1366.

tion protocol was not within the School District's permitted discretion. The overwhelming weight of the existing legal authority provides the School District with broad discretion in the manner in which it implements its transportation protocol. The School District's implementation of its transportation protocol, specifically the decision to limit transportation of all resident pupils to and from one location, is proper and well within its permitted discretion. The School District contends it has the discretion to determine what constitutes proper transportation for its resident pupils. It is not obligated to accommodate the particular domestic arrangements made by the pupil's parents. The effect of the trial court's decision is to require the School District to provide one pupil with two bus seats, even though the transportation protocol at issue does not violate Section 1361, is not contrary to the law or public policy, and is not an abuse of discretion.

Similarly, PSBA asserts the School District, in its discretion, is entitled to determine what transportation is provided to students and to adopt policies and implement transportation procedures in order to delineate the manner in which such transportation will be provided. As the PSBA points out, this discretion is extremely important because transportation decisions require consideration of a number of complex economic and logistical factors. The School District did not abuse its discretion by limiting its resident pupils to one bus seat in accordance with its transportation protocol.

Watts responds a school district does not have the discretion to disregard a statutory mandate. The School District's permitted discretion in the implementation of its protocol does not allow it to deny a resident pupil transportation from two separate and equal residences of the pupil in the same school district. The School District's adopted policy results in a resident pupil, in an equal-shared physical custody arrangement imposed by court order, being denied free transportation to and from school for half of that pupil's school days, which is contrary to the School Code and decisional law. Thus, the trial court correctly determined that the School District's implementation of its transportation protocol was not within the school district's permitted discretion.

The School Code and regulations allow school boards to manage all aspects of pupil transportation. 22 Pa.Code § 23.4. School boards may adopt policies and establish "criteria and procedures governing ... [t]he eligibility of resident pupils for free transportation services." 22 Pa.Code § 23.4(4)(i). Additionally, a school board "may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs...." Section 510 of the School Code, 24 P.S. § 5–510. Further, under Section 1331 of the School Code, school boards have the discretion to determine what constitutes "proper transportation." *Pollock v. N. Potter Joint Sch. Bd.*, 9 Pa. D. & C.3d 31 (C.P. Potter 1976) (citing *Martin v. Garnet Valley Sch. Dist.*, 441 Pa. 502, 272 A.2d 913 (1971)).

Generally, courts should not interfere with a school district's discretion regarding school policy. *Wyland; Unionville–Chadds Ford.* Indeed, the power granted to school districts under Section 1361 of the School Code, 24 P.S. § 13–1361, is "plenary, absent a showing of bad faith or abuse of discretion." *Quasti v. N. Penn Sch. Dist.*, 907 A.2d 42, 46 (Pa. Cmwlth.2006) (quoting *Roberts v. Sch. Dist. of City of Scranton*, 462 Pa. 464, 470, 341 A.2d 475, 479 (1975)). Likewise, "[o]nly if a school district is shown to have transcended its limits of legal discretion is

it amenable to the injunction process of a court of equity." *Id.* at 46 (citations omitted).

██ Nevertheless, a school district is "authorized to prescribe rules and regulations only to the extent of carrying into effect the will of the Legislature as expressed in a statute." *Wyland*, 52 A.3d at 582 (quoting *Velazquez v. E. Stroudsburg Area Sch. Dist.*, 949 A.2d 354, 359–360 (Pa.Cmwlth.2008)). A school district does not have the discretion to disregard a statutory mandate. *Wyland*.

Relying on *North Allegheny School District v. Gregory P.*, 687 A.2d 37 (Pa. Cmwlth.1996), the School District contends it is not obligated to provide transportation to and from more than one location to accommodate the parents' particular domestic arrangements. In *North Allegheny*, this Court, speaking through Judge Leadbetter, offered as part of its rationale that schools are not required to accommodate parents living separately as a matter of convenience. There, one divorced parent lived within the North Allegheny School District (North Allegheny) while another lived outside the district. The parent living outside the school district sought transportation from North Allegheny. On appeal, we held that a single school district did not need to provide transportation to and from two residences, one of which is outside the district. We opined, mitigating hardships of parents who live apart, "whether by choice or necessity," "is not the purpose of ... School Code." *Id.* at 40.

As Watts points out, *North Allegheny* is distinguishable both factually and legally. In *North Allegheny*, one parent resided outside the district, whereas here, both parents live in the district. Furthermore, *North Allegheny* concerned transportation as a "related service" to a special education student's individualized education plan, not as a duty under Section 1361. The holding in *North Allegheny* was guided by state and federal cases regarding special education services and did not address the transportation mandates under Sections 1361 and 1362. Consequently, the rationale in *North Allegheny* that a school district should not be required to provide more transportation service to more than one residence is not persuasive in the current context. *See Wyland* (distinguishing *North Allegheny* ).

Here, the School District is only partially meeting its statutory obligation of providing Watts' minor child, a resident pupil, transportation between the Middle School and his residence. While the School District retains discretion in deciding how to implement its transportation services, it does not have discretion to ignore a statutory mandate. As discussed above, by eliminating the bus service to and from Watts' residence, the School District is violating the transportation mandates of Sections 1361 and 1362. Thus, the trial court properly determined the School District's implementation of its transportation protocol was not within its permitted discretion in this regard.[7]

## C. *Wyland*

Next, the School District contends the trial court erred by relying on *Wyland*, which it claims is factually and legally distinct from this case. Specifically, *Wyland* involved students who resided in

---

7. Nevertheless, to the extent the School District's transportation protocol eliminates other bus stops, such as to daycare or after-school activities, it does not violate the School Code as there is no requirement to provide transportation services other than between school and the pupil's residence. Thus, the School District's decision to eliminate these stops falls within its permitted discretion.

more than one district and attended private school. Even though the children resided in the school district, the district in *Wyland* argued the children were not "resident pupils" and refused to provide any transportation service. The central issue in *Wyland* was whether the students were, in fact, resident pupils entitled to transportation services. *Wyland*, however, did not address the issue before this Court as to how many locations a district must provide transportation to a resident pupil within its boundaries.

Further, unlike the situation in *Wyland*, both Watts and his ex-wife reside within the School District and C.W. attends public school. The School District wholly agrees that C.W. is a "resident pupil" under Section 1361 of the School Code. And, the School District here has continuously provided transportation services to C.W. The School District asserts these factual distinctions make *Wyland* inapplicable to the case here.

Additionally, the School District argues the cases are distinct procedurally. In *Wyland*, the trial court issued a preliminary injunction, whereas here, the trial court issued a permanent injunction. This procedural difference requires that the present appeal be viewed under a different standard than that used in *Wyland*. Specifically, for a permanent injunction, a petitioner *must* show a clear right to relief. *Big Bass Lake Cmty. Ass'n v. Warren*, 950 A.2d 1137 (Pa.Cmwlth.2008). Because *Wyland* is inapplicable, Watts cannot show a clear right to relief.

Watts counters *Wyland* fully supports the trial court's decision. Contrary to School District's assertions, *Wyland* is far more similar to the facts and issues in this matter than it is dissimilar. Any facts purportedly distinguishing *Wyland* from the ones at bar are not significant or compelling. Although *Wyland* involved trans-

portation to a private school for children of divorced parents living in different school districts, its rationale is nevertheless applicable to the present situation where both parents live in the same school district. A student need only live in the school district to trigger a district's duty to transport the student. *Wyland*. Because C.W. has two equal residences, the School District must provide transportation services accommodating both locations. The trial court did not err by extending *Wyland* to the case here.

In *Wyland*, the mother and father equally shared custody of their children pursuant to a court order. The father of the children resided in the West Shore School District (West Shore), while the mother of the children resided in the Cumberland Valley School District (CV). The parents sent their children to a private elementary school within West Shore. The mother requested CV, and CV agreed, to transport her children from her home to the private school in West Shore during her periods of physical custody. After CV implemented transportation services for the children, West Shore stopped transportation services to and from the father's residence. The father filed a complaint seeking preliminary injunctive relief, which the trial court granted.

On appeal, we addressed the issue of whether the children, who attended a private school located within West Shore, were "resident pupils" of that district for purposes of the School Code's transportation mandate. West Shore argued the students were no longer resident pupils of West Shore because CV was their primary residence. Consequently, West Shore argued, CV bore the sole obligation to provide transportation, not West Shore.

This Court rejected West Shore's argument and determined that the students were, in fact, "resident pupils" of *both*

West Shore and CV under Section 1361 of the School Code. By ceasing to provide transportation to its resident pupils, West Shore violated Section 1361 of the School Code. The district did not have discretion to disregard this statutory mandate. We concluded the father was entitled to a preliminary injunction requiring West Shore to resume transportation of his children.

Although *Wyland's* factual scenario is not directly on point, its analysis is nevertheless persuasive. Significantly, *Wyland* holds a child can have two legal residences for purposes Section 1361 of the School Code. A student need only live with a custodial parent in the school district to trigger the district's duty to transport the child. *Wyland.*

Although the School District is providing service to and from C.W.'s mother's location, the location of this bus stop does not adequately service C.W.'s other legal residence in the district. By eliminating transportation to and from Watts' residence in the district, the School District is effectively depriving C.W. of free transportation during the periods of the father's custody in violation of the clear statutory mandate of the School Code. Therefore, the trial court did not err in relying upon *Wyland* to conclude that the School District is statutorily required to provide transportation for C.W. to the Middle School from *both* parents' homes.

### D. Injunction

Last, the School District contends the trial court erred in finding that Watts has a clear right to relief under the School Code and was therefore entitled to injunctive relief. The School District argues the grant of permanent injunctive relief was inappropriate because Watts did not meet the required standard for injunctive relief. Specifically, Watts did not establish a clear right to relief under the School Code, its

implementing regulations or Pennsylvania decisional law. As such, the trial court erred in granting permanent injunctive relief.

In response, Watts contends he established a clear right to relief and was entitled to injunctive relief, particularly in light of *Wyland*. *Wyland* fully supports Watts' position that the School District committed a "clear" violation of a statutory mandate by ceasing to provide C.W., a resident pupil, transportation to and from Watts' home.

Additionally, Watts asserts that, in light of *Wyland*, the School District's appeal is frivolous. Watts requests counsel fees and damages for delay pursuant to Pa. R.A.P. 2744. In reply, the School District argues Watts' assertions of frivolity are without merit.

The standards for preliminary injunctions and permanent injunctions are different, as permanent injunctions do not require a plaintiff to establish either irreparable harm or immediate relief. *Big Bass Lake*, 950 A.2d 1137, 1144 n. 8 (citing *Buffalo Twp. v. Jones*, 571 Pa. 637, 644, 813 A.2d 659, 663–664 (2002)). "To prevail on a claim for a permanent injunction, the plaintiff *must establish a clear right to relief*, that there is an urgent necessity to avoid an injury which cannot be compensated for by damages, and that greater injury will result from refusing rather than granting the relief requested." *Id.* (emphasis added).

Moreover, with a permanent injunction, the standard of review for a question of law is *de novo* and the scope of review is plenary. *Big Bass Lake*. Conversely, when reviewing a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action

of the court below. *Id.* Our review of a trial court order granting or denying a preliminary injunction is limited to examining the record for an abuse of discretion. *Quasti.* Only if it is clear that no apparently reasonable grounds exist to support the trial court's disposition will we interfere with its decision. *Id.*

As analyzed above, Sections 1361 and 1362 of the School Code, and cases interpreting these provisions, require a school district to provide transportation to a resident pupil to and from his residence. Where, as here, the child has two legal residences within the district pursuant to a division of custody, the school district must provide transportation servicing both residences. Consequently, Watts' right to relief is clear. The trial court did not err in granting permanent injunction.

■ Finally, contrary to Watts' assertion, the School District's appeal is not frivolous. *See Canal Side Care Manor, LLC v. Pa. Human Relations Comm'n,* 30 A.3d 568 (Pa.Cmwlth.2011) (a frivolous appeal warranting an award of counsel fees is one in which no justifiable question has been presented and which is readily recognizable as devoid of merit in that there is little prospect of success). Although the School District did not prevail on appeal, the School District nevertheless presented a justifiable question for review. Therefore, Watts is not entitled to counsel fees and damages under Pa. R.A.P. 2744.

### III. Conclusion

We agree with the School District that the failure of parents (or the attorneys who represent them) to include considerations of school transportation in custody arrangements can lead to complications for taxpayer-supported schools. When separated parents fail to consider school transportation, they may also invite unwanted litigation and expense. In the final analysis, however, the disposition of this and similar disputes must be driven by the needs of school children, as determined by the General Assembly.

For the stated reasons, we conclude the trial court did not err in granting permanent injunctive relief and directing the School District to resume bussing services for Watts' child, C.W., to and from Watts' residence to and from the Middle School. Accordingly, we affirm the order of the trial court. Additionally, we deny Watts' request for counsel fees and damages for delay pursuant to Pa. R.A.P. 2744.

### ORDER

**AND NOW,** this 7th day of January, 2014, the order of the Court of Common Pleas of Lancaster County is **AFFIRMED,** and Timothy L. Watts' request for counsel fees and damages for delay under Pa. R.A.P. 2744 is **DENIED.**