IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arthur Alan Wolk, Philip Browndies, :
and Catherine Marchand :
  :
      v. : No. 1465 C.D. 2016
  : ARGUED: December 15, 2016
The School District of Lower Merion, :
      Appellant :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE JULIA K. HEARTHWAY, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
JUDGE HEARTHWAY             FILED: April 20, 2017

       The School District of Lower Merion (School District) appeals from the August 29, 2016, order of the Common Pleas Court of Montgomery County (trial court), which granted the request of Arthur Alan Wolk, Philip Browndies, and Catherine Marchand (collectively, Appellees) for injunctive relief. The trial court enjoined the School District from enforcing or collecting a tax increase for fiscal year 2016-17 of over 2.4% more than was in effect for the prior year.

       On March 11, 2016, Appellees filed an amended class action complaint on behalf of present and past residents of Lower Merion, seeking $55,000,000 in damages plus interest and costs for alleged misrepresentations to the Pennsylvania Department of Education (Department) and expenditures for a continuing education program for teachers (Counts I-III). Appellees also asked the

trial court to suspend the Lower Merion School Board's (Board) authority to act for the School District, to appoint a trustee and court monitor to supervise the School District's decision-making and to manage its finances (Counts IV-V, XI); to impose a constructive trust over the School District's surpluses (Count VI); to award damages and terminate certain employees in connection with a matter settled in 2010 (Counts VII-VIII); to appoint a Board of Viewers (Count IX); to mandate that bond refinance disclosures be revised and that monies be reallocated from one account to another (Count X); and to declare the system of taxation to be unconstitutional because it taxes property owners only and does not vary the amount of tax by the number of children a taxpayer has in the schools (Count XII).

The School District filed preliminary objections to the amended complaint alleging that: (1) Appellees' claims are nonjusticable political questions; (2) Appellees lack standing; (3) the claims are barred by what is commonly called the Political Subdivision Tort Claims Act;[1] (4) Appellees failed to join indispensable parties; (5) the amended complaint fails to state a claim; (6) it would be contrary to law and the Constitution to award the relief Appellees seek; and (7) Appellees failed to exhaust all administrative remedies.

While the preliminary objections were pending before another judge, Appellees filed the petition at issue here, asking that the School District be enjoined from enacting any tax increase for the 2016-17 fiscal year. On June 14, 2016, a hearing was held on the injunction petition. At the hearing, the School District reported that it had passed a 4.4% tax increase the previous evening, and

---

[1] 42 Pa. C.S. §§8541-8542.

2

thus, the matter was moot. Appellees then requested "to address the merits of the case because [the] tax increase is absolutely illegal." (N.T. at 6.) The trial court permitted Appellees to amend the form of relief requested and argue the merits of the case. Seeking an order enjoining the School District from taking any further actions to implement the tax increase, Appellees presented two witnesses. The substance of their testimony is summarized below.

Section 333 of the Taxpayer Relief Act (Act 1),[2] 53 P.S. § 6926.333, authorizes the School District to increase its taxes up to a certain index without taxpayer approval, which is 2.4% in this case. However, the School District can increase its taxes by up to 4.4% without taxpayer approval if it applies for certain exemptions with the Department. After projecting a $9.3 million dollar deficit for the 2016-17 budget, the School District applied for, and was granted, exemptions related to pension contributions and special education costs by the Department. The School District tax increase of 4.4% was thus facially within the Act 1 requirements.

The School District projected a deficit for every fiscal year from the 2009-10 fiscal year through the 2015-16 fiscal year; however, it actually realized a *surplus* of approximately $42.5 million during those fiscal years. The School District did not credit taxpayers after it realized a surplus, nor did it adjust its budgeting practices to account for the surplus. Over that time-period, the School District underestimated annual revenue by approximately one percent and overestimated expenditures by approximately five-and-a-half percent. Each fiscal

_____

[2] Act of June 27, 2006, P.L. 1873, *as amended.*

3

year, the School District projected a budget deficit and proposed a tax increase. The School District has raised taxes by approximately 53.3% since 2006.

The School District, in approving the 2016-17 budget, authorized the Board to transfer funds from its general, unreserved fund to the capital reserve fund. A school district has the authority to make that transfer as long as it complies with the Public School Code of 1949 (School Code).[3] This transfer allows a school district to move funds that would be reflected in the general, unreserved fund to the capital reserve fund, which is not governed by statutory restrictions. Absent that transfer, the School District would have an unrestricted, general fund balance greater than the 8% limit imposed by section 688 of the School Code, 24 P.S. §6-688.[4]

The evidence further provided that each fiscal year since 2009-10, the School District certified to the Department that the estimated ending, unreserved, undesignated fund balance would be equal to or less than 8% of the total estimated expenses. The School District, whose only restriction is on the ending, unreserved, undesignated fund balance, has never exceeded the 8% amount. However, at the end of each fiscal year, the School District transfers monies from its general, unreserved fund into other funds to remain in compliance, get more funding, and raise taxes to a higher rate for the following fiscal year.

---

[3] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 – 27-2702.

[4] Section 688 of the School Code, *as amended*, 24 P.S. §6-688, *added by* the Act of December 23, 2003, P.L. 304.

On August 29, 2016, the trial court issued an injunction ordering the School District to revoke that portion of the tax increase that had been authorized by the Department pursuant to section 333 of Act 1, 53 P.S. § 6926.333, to compensate for the increased costs of pension and special education obligations. The trial court further enjoined the School District from collecting a tax increase for fiscal year 2016-17, of over 2.4% more than what was in effect for the prior fiscal year. The trial court reasoned that:

> The School District's accounting practices may not incur a specific sanction of the statutes regulating them, but they are skirting the purposes of the law to prevent school districts from both accumulating a surplus over a certain percentage of the annual budget and raising taxes over a certain level without going to a referendum of the voters. The [School] District's legerdemain in yearly projecting multimillion-dollar deficits in documents required by law to be published to the voters and/or filed with the Commonwealth and not disclosing that contrary to projections the [School] District every year experienced multimillion-dollar surpluses, which it then transferred into other accounts, while every year seeking and obtaining the Commonwealth's permission to raise taxes beyond what would ordinarily be permitted without a referendum of the voters based on questionable cost estimates, was less than the transparent budgeting and taxing process the Public School Code and the Taxpayer Relief Act sought painstakingly to institute. The [School] District's tax increases in these circumstances violated the spirit, and in some cases the letter, of these laws.
>
> The remedy provided by the law for a school district's repeatedly and intentionally violating the intendment of the Public School Code in budgeting and taxing practices is an injunction against the practices by the courts. . . .
>
> * * *

5

Taxpayers and the public should be entitled to expect that governmental units taxing them will not year after year pursuant to a systematic pattern present them with projected deficits to justify raising taxes, raise taxes as a consequence, then record actual massive surpluses in the general fund at the end of each fiscal year, only to transfer the surpluses into other, designated accounts so that the source of the funds cannot be readily determined by those not directly involved in the governmental unit's financial affairs. An injunction against this repeated practice of the . . . School District is the only appropriate remedy to bring the illegal practice to a halt.

(Trial Ct. Op., at 14-15.)

Along with enjoining the School District from "enforcing or collecting a tax increase for fiscal year 2016-17 of over 2.4% more than was in effect for the prior fiscal year," the trial court also ordered the School District to "adopt a resolution revoking the tax increase of 4.4[]% for fiscal year 2016-17, and enact[] a tax that represents an increase of no more than 2.4% greater than the tax in effect for fiscal year 2015-16."[5] (*Id.*, at 15-16.) The School District appealed to this Court.[6]

Before this Court, the School District contends that the trial court issued a preliminary injunction, which is immediately appealable as an

---

[5] The trial court did not address "the question of any rebates, refunds, or credits for taxes already paid," nor did it address Appellees' request to establish a constructive trust for the taxpayers who already paid. (Trial Ct. Op., at 16.)

[6] Our review of a permanent injunction is limited to determining whether the trial court committed an error of law. *J.C. Ehrlich Company, Inc. v. Martin*, 979 A.2d 862, 864 (Pa. Super. 2009).

6

interlocutory appeal under Pa. R.A.P. 311(a)(4), and thus, Appellees' motion to quash for failure to file post-trial motions should be denied. We disagree.

In determining whether an injunction is preliminary or permanent, an appellate court must look to the nature of the relief granted. *Soja v. Factoryville Sportsmen's Club*, 522 A.2d 1129, 1132 (Pa. Super. 1986). A preliminary injunction is issued to preserve the status quo and prevent imminent and irreparable harm that could occur before the case is heard on its merits. *Id*. at 1131 (Pa. Super. 1986). A preliminary injunction is an extraordinary remedy that may only be granted if a clear right to relief is established. *Id.* In preserving the status quo, the court must restore the last peaceable, non-contested status that preceded the controversy. *Id.* A preliminary injunction shall issue "only after written notice and [a] hearing." Pa. R.C.P. No. 1531(a). "The question to be determined at this hearing is whether there is an urgent necessity for interim relief before the case can be heard on the merits." *Soja*, 522 A.2d at 1131.

A permanent or final injunction is issued when a party establishes a clear right to relief. *Board of Revision of Taxes v. City of Philadelphia*, 4 A.3d 104, 133 (Pa. 2010). "[T]he party need not establish either irreparable harm or immediate relief," as is necessary when seeking a preliminary injunction, and "a court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law." *Buffalo Township v. Jones*, 813 A.2d 659, 663 (Pa. 2002). When a final injunction is granted, the court must issue a decree nisi with a statement of the issues, findings of fact and conclusions of law. *Soja*, 522 A.2d at 1132.

7

Here, Appellees sought an "injunction" directing the School District to rescind a 4.4% tax increase that was passed in violation of the School Code and Act 1, and to refund any taxes that were paid under it.[7] The trial court held a hearing to "address the merits of the case because the tax increase [that occurred the night before the hearing,] was [allegedly] illegal."[8] (N.T. at 6.) At the hearing, testimony and evidence were presented and both parties had the opportunity to present and cross-examine witnesses. At the hearing's conclusion, the trial court asked the parties to submit proposed findings of fact, conclusions of law, and responses to opposing submissions. The parties complied. The trial court thereafter, filed an opinion and order with extensive findings of fact and conclusions of law. The trial court did not "maintain the status quo," as it would in a preliminary injunction, but enjoined the School District from enforcing or collecting a tax increase for fiscal year 2016-17 that was more than 2.4% over the tax from the previous fiscal year. The trial court further ordered the School District to adopt a resolution revoking the 4.44% tax increase for 2016-17, and enact a tax of no more than 2.4% greater than the previous fiscal years' tax. Thus, after looking at the "nature of the relief granted," we must conclude that a permanent injunction was issued by the trial court.

---

[7] Appellees requested an "injunction," they did not specify whether the injunction was "preliminary" or "permanent."

[8] The trial court permitted Appellees to amend their requested relief at the hearing because the School District passed the tax increase the night before the scheduled hearing. A trial court may enter an order for a *permanent* injunction where appropriate based upon the testimony, evidence, and arguments presented at a hearing for a *preliminary* injunction. *See Watts v. Manheim Township School District*, 84 A.3d 378, 381 (Pa. Cmwlth. 2013).

8

Pursuant to *City of Philadelphia v. New Life Evangelistic Church c/o Bishop Jackson*, 114 A.3d 472, 478-79 (Pa. Cmwlth. 2013), post-trial motions must be filed within ten days following the trial court's ordering a permanent injunction or the issues raised on appeal are waived. In *New Life Evangelistic Church*, the church was given the opportunity to submit evidence and cross-examine witnesses in response to the city's case. This Court concluded that a trial was held for the purposes of Pa. R.C.P. No. 227.1, and post-trial motions needed to be filed.

Accordingly, because the trial court issued a permanent injunction and the School District failed to file post-trial motions, we must dismiss the School District's appeal because all of its issues are waived.[9] *See* Pa. R.C.P. No. 227.1(c)(2) and (b)(2).[10]

_____
JULIA K. HEARTHWAY, Judge

---

[9] Because we dismiss the School District's appeal for failure to preserve issues on appeal, Appellees' motion to strike the briefs of the School District, the Pennsylvania School Boards Association, and, collectively, the Pennsylvania State Education Association, Pennsylvania Association of School Administrators, and the Pennsylvania Association of School Business Officials, is dismissed as moot.

[10] "Post-trial motions shall be filed within ten days after . . . the filing of the decision in the case of a trial without jury." Pa. R.C.P. No. 227.1(c)(2). Further, grounds for post-trial relief must be stated in the motion or they are deemed waived. Pa. R.C.P. No. 227.1(b)(2).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arthur Alan Wolk, Philip Browndies, :
and Catherine Marchand :
                         :
        v.            :   No. 1465 C.D. 2016
                         :
The School District of Lower Merion, :
            Appellant       :

## O R D E R

AND NOW, this 20th day of April, 2017, the School District of Lower Merion's appeal of the order of the Montgomery County Court of Common Pleas in the above-captioned matter is dismissed. Further, Arthur Alan Wolk, Philip Browndies, and Catherine Marchand's Motion to Strike the Briefs of Appellant and Amici Curiae is dismissed as moot.

_____

JULIA K. HEARTHWAY, Judge