# School District of Borough of Ben Avon *v.* School District of Pittsburgh.

*School code—Act of May 18, 1911, P. L. 309, sections 1401, 1402, and 1412—Act of May 6, 1913, P. L. 192—Residence of children— Districts—Liability for tuition.*

Under the provisions of sections 1401, 1402 and 1412, of the Act of May 18, 1911, P. L. 309, (School Code) as amended by the Act of May 6, 1913, P. L. 192, a child who is an inmate of a charitable institution may attend the public school wherein the institution is situated, and the cost of his education must be paid by the district of which the child is a legal resident. "Residence" and "domicile" are not convertible terms and are not always equivalent. "Residence" is a word whose statutory meaning depends upon the legislative purpose, as well as the context of the statute. A child's right to attend school in a district is not dependent on his parents' or guardian's right to vote therein or being taxed therein, or having acquired a legal domicile there, but only upon their residing in the district.

In construing the school laws, the interpretation will be adopted which will be more likely to carry into effect the purpose of these laws, to provide all of the children residing within the Commonwealth with a good common school education. The child is the paramount object of the school law and his education and not the exact apportionment of its cost among the various subdivisions of the Commonwealth, is its chief concern. A child whose parents reside in the district may go to school there whether or not his parents are legally domiciled there, or are entitled to vote there, or are taxed there, and the cost thereof may not be shifted to the district of his parents' domicile.

Argued April 28, 1921. Appeal, No. 150, April T., 1921, by defendant, from judgment of C. P. Allegheny County, July T., 1920, No. 386, on case stated in the suit of School District of the Borough of Ben Avon v. School District of Pittsburgh. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Case-stated to determine liability for cost of tuition of indigent children. Before SWEARINGEN, J.

From the record it appeared that Frank J. Schultz, his wife and three minor children prior to December 11, 1910, resided at 116 Vermont Street, Pittsburgh, Pa., at which place the said Frank J. Schultz maintained his domicile. On December 11, 1916, the said Frank J. Schultz died survived by his widow and three children. The widow on the 26th day of December, 1910, placed her children in the Home for the Widows and Orphans of Odd Fellows in the Borough of Ben Avon. Thereafter the said widow continued to keep and maintain her home at 116 Vermont Street, Pittsburgh, Pa., until the 16th day of February, 1913, where she removed to Wilkinsburg as a domestic, where she remained until June 23, 1917.

In September, 1913, two of the children were placed in the Ben Avon school and in September, 1914, the third child was placed in the Ben Avon school. From June 23, 1917, to the time of the submission of the case, Mrs. Schultz has worked as a domestic in various houses in Pittsburgh.

A case-stated, setting forth all of the facts, was agreed upon and submitted to the court, with the request that if the court should be of the opinion that the legal residence of the Schultz children during the entire period from September 14, 1913, to June 1, 1919, was Pittsburgh, judgment should be entered for the plaintiff in the sum of $732.04, but if the court should be of the opinion that the legal residence of the Schultz children during the period from February 6, 1913, to June 23, 1917, was not Pittsburgh, then judgment be entered for the plaintiff in the sum of $331.48 with interest from June 1, 1919.

The court filed an opinion finding that the legal residence of the Schultz children during the period of February 6, 1913, to June 23, 1917, was not Pittsburgh and entered judgment in favor of the plaintiff in the sum of

$331.48 with interest from June 1, 1919, together with costs. Plaintiff appealed.

*Error assigned* was the order of the court.

*Fred C. Houston,* for appellant.—The legal residence as used in the Act of 1913 is synonymous with domicile and as the mother's legal residence continued to be Pittsburgh the plaintiff was entitled to judgment in favor of the full sum mentioned in the case stated: Raymond v. Leishman, 243 Pa. 64; Price v. Price, 156 Pa. 617; Reed's App., 71 Pa. 378; Fry's Election Case, 71 Pa. 302; 19 Corpus Juris 422.

*J. Rodgers McCreery,* for appellee.

OPINION BY KELLER, J., July 14, 1921:

This appeal is from the judgment of the court below on a case stated. It has to do with the construction of the School Code (Act of May 18, 1911, P. L. 309), and especially with sections 1401, 1402 and 1412 (as amended by the Act of May 6, 1913, P. L. 192).

These sections are as follows: "Section 1401. Every child, being a resident of any school district in this Commonwealth, between the ages of six and twenty-one years, may attend the public schools in his district, subject to the provisions of this act."

"Section 1402. A child shall be considered a resident of the school district in which his parents or the guardian of his person resides. If any child has no parents or guardian of his person, then such child shall be considered a resident of the district in which the person sustaining parental relations to such child resides."

"Section 1412. The board of school directors of any school district in this Commonwealth, in which there is located any orphan asylum, home for the friendless,

children's home, or other institution for the care or training of orphans or other children, shall permit any children who are inmates of such homes, but not legal residents in such district, to attend the public schools in said district, either with or without charge for tuition, textbooks, or school supplies as the directors of the district in which said institution is located may determine: Provided, That when the education of such inmates of such institutions is charged for, the cost thereof shall not exceed the cost of tuition, textbooks, and school supplies of other children of similar grade in such district: And, provided further, That such cost shall be paid to the district in which such institution is located by the district of which the respective pupils are legal residents."

It will be noted that the terms, "resident" and "legal resident," as they appear in these sections are used in connection with the children, not their parents or guardians. The child may attend school in the district of which he is a resident. He is to be considered a resident of the school district in which his parents, or those sustaining parental relations to him, reside,—not have their domicile or legal residence,—and if any child is an inmate of an orphans' home, but not a legal resident in such district, he shall be permitted to attend school in said district and the cost of his tuition, etc., shall be paid by the district of which he—not his parent or guardian—is a legal resident.

Our Supreme Court has pointed out in the case of Raymond v. Leishman, 243 Pa. 64, that the terms "residence" and "domicile" are not convertible terms and not always equivalent; that "residence" is a word whose statutory meaning depends upon the legislative purpose as well as the context of the statute.

It is evident that by the words "legal residents," as employed in section 1412 supra in connection with children of school age, the legislature did not have in mind the domicile or legal residence where a man's political

rights are to be exercised and where he is liable to taxation, as suggested by the appellant, for children have no vote and are not taxed; their right to attend school in a district is not dependent on their parents' or guardian's right to vote therein, or being taxed therein, or having acquired a legal settlement there, but only on their residing there.

The purpose at the base of our common school laws is to provide all children residing within the Commonwealth with a good common school education. In carrying out this purpose the various school districts are merely the agents of the Commonwealth: Ford v. School District, 121 Pa. 543; Gettysburg v. School District, 50 Pa. Superior Ct. 87. In construing the school laws, therefore, that interpretation will be adopted which will be more likely to carry into effect this generous purpose. The child is the paramount object of our common school law. His education, and not the exact apportionment of its cost among various subdivisions of the Commonwealth, is its chief concern. Hence a child whose parents reside in a district may go to school there, whether or not his parents are legally domiciled there, are entitled to vote there, or are taxed there, and the cost thereof may not be shifted to the district of his parents' domicile. The law applicable to settlements in poor districts has no place here. A man does not acquire a new settlement, for the purpose of securing relief, etc., until after he has continued to reside therein for one year or complied with the other requirements of the Acts of April 6, 1905, P. L. 112, or June 13, 1836, P. L. 539, but his children may attend school in the new district from the first day of his residence therein, without recoupment to the district from any source. A state official, who lives in Harrisburg, while employed in the service of the State is not deemed to have gained a residence there for the purpose of voting (Constitution, article VIII, section 13), but his children may attend school there while he is actually residing with his family

in said city. The children of an alien residing in this State may attend school here, no matter whether they were born here or abroad and notwithstanding he maintains his domicile in such foreign country.

We are satisfied that the word "resident" as used in sections 1401 and 1402, as well as the word "residing" in section 401, which imposes on school directors the duty of establishing and maintaining a sufficient number of elementary public schools to educate every person between the ages of six and twenty-one years, residing in such district, who may attend, refers to those living or dwelling or abiding in said district and is not confined to those whose parents or guardians are domiciled therein or have acquired a legal residence therein for voting or taxing purposes.

The use of the word "legal" in connection with "resident" in section 1412 does not change this construction. As before pointed out, the tuition, etc., is chargeable to the district of which the child is a legal resident. The word "legal" is not thus used in order to limit the residence, as theretofore explained, to "domicile," but rather means a resident as previously defined in section 1402 of the act. One so resident is a legal resident for the purposes of the code. The term is so used in section 1414 providing for compulsory attendance and its enforcement: "Every child having a legal residence in this Commonwealth, as herein provided,......is required to attend a day school......" etc., which is applicable to every child within the prescribed ages, living or abiding, as distinguished from merely sojourning, within the dis-trict whether his parents are domiciled therein or not.

As it appears from the case stated that Mrs. Schultz, from February 6, 1913, to June 23, 1917, lived in Wilkinsburg, where she was working as a domestic, we are of opinion that she was for the purposes of the School Code a resident of Wilkinsburg during that time; that had her children lived with her instead of at the Odd Fellows' Home they would have been entitled to attend

school there under sections 1401 and 1402 of the Code and their mother could have been compelled to send them there under section 1414; that this is not affected by the fact that she had in mind that at some future time she might or would return to Pittsburgh. As was said by the court below: "We are not allowed to speculate as to what Mrs. Schultz might have done or might have had in her mind. We must consider alone what she did. She gave up her residence in Pittsburgh and went to Wilkinsburg, where she lived not for a few weeks, but for over four years. She had no other residence anywhere during that period, in contemplation of the School Code."

It follows that the court below committed no error in holding that the School District of Pittsburgh was not responsible for the cost of the children's tuition, etc., during that period and that the School District of Wilkinsburg was.

The judgment is affirmed; costs on this appeal to be paid by the appellant.

