## Harris *v.* Board of Public Education of the School District of Philadelphia, Appellant.

Argued January 15, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Theodore F. Jenkins,* for appellant.—The powers given to the board of public education by the School Code (Act of May 18, 1911, P. L. 309, 329) authorized the establishment of a school in the county prison, when requested by the inspectors of the prison: Ben Avon S. Dist. v. School Dist., 77 Pa. Superior Ct. 75; Confluence S. Dist. v. School Dist., 88 Pa. Superior Ct. 299.

*Robert W. Finletter,* with him *Edmund R. Finegan,* for appellee, were not heard, but argued in the printed brief.—The board of education had no authority to establish a school: School Dist. v. Fuess, 98 Pa. 600; Mulligan v. School Dist., 241 Pa. 204; Renick v. Boyd, 99 Pa. 555; Weiss v. Swift & Co., 36 Pa. Superior Ct. 376.

*Walter Biddle Saul,* amicus curiæ, was not heard, but cited in his brief: Haddock v. Com., 103 Pa. 243; Com. v. Kevin, 202 Pa. 23; Riddell v. R. R., 262 Pa. 582.

OPINION BY MR. CHIEF JUSTICE FRAZER, March 14, 1932:

The board of inspectors of the Philadelphia County Prison requested the Philadelphia Board of Public Education to establish a school in the county prison at Holmesburg, Philadelphia, for the instruction of prisoners between the ages of sixteen and twenty-one years.

The board of education, after due consideration, adopted a resolution directing the superintendent of its schools to install an educational department in the institution named. Plaintiff filed a taxpayers' bill to restrain the establishing of educational facilities at the place indicated, on the ground that "the board of education of the school district of Philadelphia has no authority to expend moneys raised by taxation for the

education of school children of the City of Philadelphia, for the education of the inmates" of the prison. Defendant's answer avers the School Code confers ample authority on the board of public education to warrant their action establishing the school. After hearing on bill and answer in the lower court, the injunction prayed for was granted. The board of public education has appealed.

The single question before us is whether the board of public education of Philadelphia County has power to provide educational facilities at the municipality's county prison. Holmesburg Prison is within the Philadelphia school district area. The authority of the school board as defined in section 401 of the Act of May 18, 1911, P. L. 309, 329, embraces the establishment, equipment and maintenance of "a sufficient number of elementary public schools, in compliance with the provisions of this act, to educate every person, residing in such district, between the ages of six and twenty-one years, who may attend; and may establish, equip, furnish, and maintain the following additional schools or departments for the education and recreation of persons residing in said district, which said additional schools or departments, when established, shall be an integral part of the school system in such school district, and shall be so administered, namely [naming seventeen departments covering practically the entire field of education below college grades],—together with such other schools or educational departments as they, in their wisdom, may see proper to establish." The last clause quoted is significant. In broad terms, it reposes a wide discretion in the school board to institute, besides specifically named classes of schools and educational departments, "such other schools or educational departments as they, in their wisdom, may see proper to establish." Inasmuch as the answer to the bill shows that the school board resolved to conduct a school at the prison upon the request of the inspectors in charge there-

of, who declared "we have 1,600 inmates and many of them have no education whatever," and following a report and recommendations by the superintendent of schools, the entire matter having been given "due consideration," we cannot say the board acted without wisdom. If the above quoted words from the Act of 1911 are to be given their ordinary meaning, the school board undoubtedly is vested with authority to establish the school here proposed. It is simply another educational department which, in its wisdom, the school board sees fit to create. The fact that pupils in attendance who reside within the school district and are otherwise proper subjects for schooling, are temporarily in a prison, does not place them beyond the pale of state education. On the contrary, efforts to raise their standards and fit them for liberty by the establishment of schools or other means to aid them should be upheld where the provision of law, as in the case before us, is sufficiently comprehensive to sustain such action.

The court below was apparently of the opinion that to permit the establishment of the school in question by the local board of education would bring about a conflict between the state board of education and the state department of welfare because the latter is directed by section 2304(b) of the Administrative Code (Act of April 9, 1929, P. L. 177) "to inquire and examine into...... methods of instruction" in "supervised institutions," such as jails and prisons, and to correct objectionable conditions. No such conflict appears here. The brief of the amicus curiæ points out: "The state department of welfare does not desire to assume the burden of educating the inmates of the House of Correction [County Prison]. It confines itself to supervision of such education as may be provided. The prison inspectors of the City of Philadelphia state they are without facilities or funds to provide education and they appeal, with the approval of the committee of the Board of Judges of the Courts of Common Pleas of Philadelphia, to the board

of education of the City of Philadelphia to undertake that work." The proposed school in question followed a request by the prison authorities, and accordingly we can infer its existence will not interfere with prison discipline. Moreover, the fact that education for minors in the institution is provided by the local education board in no way impinges on the authority of prison officials, under the jurisdiction of the department of welfare, to govern the conduct of those who attend the classes; if it should, that department is at liberty to cancel the arrangement with the board of education at any time the school conflicts with or interferes with the management of the prison.

As a matter of public policy, schools of the character here proposed are to be encouraged if practicable under the circumstances. The record fails to disclose impracticability of the proposal or of conditions tending to prevent a school in the county prison from being "an integral part of the public school system," as required by section 401 of the School Code. We cite with approval what was said by the Superior Court in Ben Avon Boro. School Dist. v. Pittsburgh School Dist., 77 Pa. Superior Ct. 75, 79: "The purpose at the base of our common school laws is to provide all children residing within the Commonwealth with a good common school education. In carrying out this purpose the various school districts are merely the agents of the Commonwealth: Ford v. School District, 121 Pa. 543; Gettysburg v. School District, 50 Pa. Superior Ct. 87. In construing the school laws, therefore, that interpretation will be adopted which will be more likely to carry into effect this generous purpose. The child is the paramount object of our common school law. His education, and not the exact apportionment of its cost among various subdivisions of the Commonwealth, is its chief concern."

The decree of the court below cannot be supported either in law or policy. The law permits the establish-

ment of the proposed school by the school board, whose powers in such matters have wisely been made extensive. The provision of educational facilities for those under restraint by process of law, especially the younger class, should not be overthrown by injunctions in equity, particularly when sanctioned by law. Equity follows law.

The decree of the court below is reversed, costs to be paid by the appellee plaintiff.