## Pollock v. Northern Potter Joint School Board

*Harold B. Fink, Jr.*, of *Fink and Young*, for plaintiffs.

*Robert Cox*, of *Cox, Wilcox, Owlett and Lewis*, for defendant.

PATTERSON, *P.J.*, January 12, 1976—Plaintiffs, Fred and Linda Pollock, and their six-year old daughter, Kim, by mandamus ask this court to order the Northern Potter Joint School Board, defendant, to provide school bus transportation from the door of plaintiffs' residence on Dennis Hill Road, Township Road 468, in Harrison Township, Potter County, to the Harrison Valley Elementary School which is two and one-half miles from plaintiffs' residence. The Dennis Hill Road is dirt with a gravel surface, between 14 feet and 16 feet in width, and the Pollocks are the only permanent residents on the road, which is lightly traveled. It intersects Pa. Route 49, a paved state highway, one-half mile from plaintiffs' residence.

The last school bus service on the Dennis Hill Road and to the Pollock residence ended about

eight years ago with the termination of school attendance by the one pupil then being bused, plaintiff, Fred Pollock. Such busing was provided by a car, station wagon or a passenger van-type vehicle.

There was testimony by both Pollocks that they considered walking the Dennis Hill Road hazardous for a child. There was no evidence they had sought such a determination from the Bureau of Traffic Safety, nor was there evidence that a shelter was ever requested by plaintiffs at the intersection of Dennis Hill Road and Route 49.

Plaintiff Fred Pollock in his testimony cited several instances of bus pick-up services currently provided other pupils in situations where, according to him, road conditions were not significantly different from the Dennis Hill Road.

Rodney Cowburn testified that, as business manager of Northern Potter Joint School District, he was responsible for contracting for the busing of all students attending the schools in that district. There are 21 contracted bus routes and all contracts had been let as of the date of plaintiffs' request to him for service. A total of 1,100 students attend the Northern Potter Joint Schools of whom 85 percent to 90 percent are transported daily over routes servicing an area of 231 square miles over paved and unpaved roads. Mr. Cowburn testified that he routinely resolved the problems of pupil pick-up points without the necessity for reference to the school superintendent, Dr. J. Alan Aufderheide, or to the school board. In the case of plaintiffs' request he personally inspected the Dennis Hill Road and the availability of a turn-around point in the vicinity of the Pollock residence. He also discussed the problem with the bus driver, Gaylord Miller, who

provided contract services on Route 49 passing the Dennis Hill Road intersection. He concluded that all factors considered, it was not practicable and not required by the Public School Code to provide bus service to the Pollock residence.

Gaylord Miller, with 31 years of bus driving experience, testified that he was personally familiar with the Dennis Hill Road and the Pollock residence and that his 72-passenger bus could not, because of the turning radius of the vehicle and because of the sharpness of the turn at the intersection of the Dennis Hill Road and Route 49, negotiate such turn from Route 49 without crossing the centerline of Route 49 in the face of oncoming traffic. He also testified that there was no existing adequate turn-around area in the vicinity of plaintiffs' residence.

Dr. J. Alan Aufderheide, Superintendent of the Northern Potter Joint School District, testified that he also personally inspected the Dennis Hill Road in connection with plaintiffs' busing request and that he reviewed the problem with Mr. Cowburn and Mr. Miller and personally prepared defendant's exhibit 12, a scaled diagram depicting the bus turning radius problem at the intersection of Route 49 and the Dennis Hill Road and which, he testified, confirmed the impossibility of the bus making the turn without illegally crossing the solid highway centerline.

Plaintiffs' request was reviewed by Mr. Cowburn and Dr. Aufderheide with the transportation committee of the school board and with the school board solicitor, Edwin Glover, on September 17, 1975, and on the same date plaintiffs' busing request was presented to the school board which at that time had

been served with the complaint in this case on behalf of the Pollocks. The board was advised that bus transportation was being provided for Kim Pollock in accordance with the Pennsylvania Public School Code of March 10, 1949, P.L. 30, as amended, 24 P.S. §1-101 et seq. The board thereupon referred the matter to the school board solicitor.

The relevant Public School Code provisions are 24 P.S. §13-1331, which in part provides: "In case there is no public school . . . within two miles by the shortest public highway of the residence of any child . . . such child shall be furnished *proper transportation* at the expense of the school district to and from a school with the proper grades." (Emphasis supplied.)

24 P.S. §13-1362, in part provides: "The free transportation of pupils, *as required or authorized by this act*, or any other act, *may* be furnished by using either school conveyances, private conveyances, or electric railways, or other common carriers, *when the total distance which any pupil must travel by the public highway to or from school, in addition to such transportation, does not exceed one and one-half (1½) miles*, and when stations or other proper shelters are provided for the use of such pupils *where needed*, and when the highway, road, or traffic conditions are not such that walking on the shoulder of the road where there are no sidewalks constitutes a hazard to the safety of the child, as so certified by the Bureau of Traffic Safety." (Emphasis supplied.) Act of December 29, 1972, P.L. 1726, 24 P.S. §13-1362.

The foregoing provisions must be considered together as defining the responsibility of school offi-

cials and school boards in providing transportation to school pupils. Integrated they provide, in essence, that where there is no public school within two miles by public road from a pupil's residence, proper, free transportation shall be provided by the school district to the pupil and that such proper transportation cannot require the pupil to travel more than one and one-half miles on a public road to the transportation pick-up station. The one and one-half mile limit is also qualified by the condition that proper shelter be provided "where needed" and walking conditions constituting a hazard to the safety of the pupil do not exist, the existence of such hazard to be determined by the Bureau of Traffic Safety.

Mandamus against public officials is an extraordinary remedy. Pennsylvania decisions involving school officials and school boards reflect a consistent reluctance to grant relief in situations involving the exercise of official discretion or judgment as contrasted to a statutorily defined ministerial duty and where the complainant has an equally clear, specific and well-defined legal right: Francis v. Corleto, 418 Pa. 417, 211 A. 2d 503 (1965); Porter v. Bloomsburg State College, 450 Pa. 375, 301 A. 2d 621 (1973); Landerman v. Churchill Area School District, 414 Pa. 530, 200 A.2d 867 (1964).

It is, of course, appropriate for the court to inquire and consider whether action, discretionary in nature, was, notwithstanding, unreasonable, arbitrary or capricious.

Plaintiffs testified concerning four pupil pick-up situations in their school district which they contended involved circumstances not factually distinguishable from their situation. In each instance

the school district business manager, Rodney Cowburn, cited distinguishing factors, such as the better physical characteristics of the road, the existence of an adequate turn-around for the type bus involved, the fact that the school bus necessarily passed the pupils' residence, or the fact that the pupils' residence was more then one and one-half miles from the bus stop and the parents were reimbursed for providing feeder service.

The reasoning of the Supreme Court in Martin v. Garnet Valley School District, 441 Pa. 502, 272 A. 2d 913 (1971), is dispositive of the claim by plaintiffs for portal to portal pupil transportation and for compensation for having transported their child two and one-half miles door to door. The court stated at page 506:

"However, the determination of whether the transportation is 'proper' is, in the first instance, vested in the discretionary power of the school board. Since the term 'proper transportation' is nowhere defined, there can be no 'clear legal right' in the appellants and no 'corresponding duty' in the appellee until a determination has been reached that the transportation provided is not proper. . . ."

And at p. 507:

"Nor can mandamus be used to compel the school board to reach the conclusion which appellants desire. As we stated in Travis v. Teter, supra: . . . [I]n a mandamus proceeding a Court can compel a public official who is vested with discretionary power to exercise that discretion; but (unless the discretion is arbitrarily or fraudulently exercised or is based upon a mistaken view of the law) it cannot interfere with or control the official's discretion or judgment. Expressed another way, it is the discre-

tion and judgment of the official (who is vested with a discretionary power) which prevails and not that of a Court or a jury or a person aggrieved; and a Court cannot compel such official to exercise his discretion in a manner which will produce a result which the Court may deem wise or desirable . . ."

The record before the court does not support a finding that the school board exercised its discretion in an arbitrary or fraudulent fashion and consequently the court is not constrained to act as a super school board and substitute its judgment for that of the school board.

Plaintiffs' brief dwells at length on the board's duty to provide a shelter, citing Com. v. Grzybowski, 6 Northumb. 367 (1924). Plaintiffs' testimony reflects no request for a shelter and plaintiffs' prayer for relief in their amended complaint does not ask that a shelter be provided. Hence the court, on the record before it, cannot conjecture concerning a situation in which plaintiffs had requested and defendant refused a shelter.

Finally, in the face of the record, facts show that plaintiffs reside two and one-half miles from school but within one and one-half miles of the bus pickup, the court cannot conclude that plaintiffs are entitled to compensation, notwithstanding their tenacious persistence in the vindication of what they obviously regard as a matter of principle by driving their daughter daily the entire distance to and from school rather than one-half mile to the bus stop. The court understands and sympathizes with the parental concern for the child's safety, having had several small children similarly situated. The fact remains that, in many towns, including Coudersport, Pa., children the same age as Kim Pollock walk more than one-half mile to school in

all types of weather and while admittedly on side-walks many must cross unguarded intersections in travel.

Since reasonable grounds for granting plaintiffs the relief requested have not been shown, judgment is entered for defendant. Each party to bear its own costs.