**[J-25-2015]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**

| | |
|---|---|
| TIMOTHY L. WATTS, | : No. 112 MAP 2014 |
| | : |
| Appellee | : Appeal from the Order of the |
| | : Commonwealth Court, at No. 935 C.D. |
| | : 2013, dated January 7, 2014, Affirming the |
| v. | : Order of the Court of Common Pleas of |
| | : Lancaster County, Civil Division, at No. CI- |
| | : 12-17815, dated May 8, 2013 and |
| MANHEIM TOWNSHIP SCHOOL | : amended May 24, 2013 |
| DISTRICT, | : |
| | : |
| Appellant | : ARGUED:  April 7, 2015 |

<u>OPINION</u>

**MR. JUSTICE BAER**                    **DECIDED:  August 26, 2015**

We granted review to consider whether the Public School Code of 1949[1] mandates that a school district provide free transportation to a student from two different residences where the student's parents share physical custody of the student and both parents reside within the school district.  The Commonwealth Court held that the Manheim Township School District ("the School District") must provide transportation to both parents' residences.  For the reasons set forth herein, we agree that the School District is required to provide free transportation to and from both parents' residences in this case.  Accordingly, we affirm the decision of the Commonwealth Court.

---

[1]    24 P.S. §§ 1-101 – 27-2702 ("the School Code").

The facts of this case are not in dispute. Timothy L. Watts ("Father") shares legal and physical custody of his child, C.W., with C.W.'s mother ("Mother") on an alternating week basis pursuant to a court order. Both Father and Mother reside within the School District where C.W. attends public middle school. Father's residence is approximately 4 ½ miles from C.W.'s school and Mother's residence is approximately 5 ½ miles from the school. C.W.'s bus stop at Mother's home is approximately 1.9 miles from Father's residence.

Before 2010, the School District provided transportation services for its students to multiple locations, including residences, daycare facilities, and after school activities. The School District estimated that 400 students benefitted from transportation to multiple locations, with somewhere between 50 and 75 of these students being transported to multiple parents' residences as a result of custody arrangements. The School District stated that it did not have information on how many students were subject to an alternating week custody arrangement like C.W.

At the beginning of the 2010-2011 school year, however, the School District instituted changes in its transportation policy which included eliminating transportation to and from more than one location per student, expanding the number of students required to walk to school, and increasing the route efficiency of its busses. The combined effect of these changes reduced the bus fleet by four busses, saving the School District approximately $200,000 per year. The School District does not indicate what portion of its savings was attributable to limiting students in shared physical custody arrangements to only one residence. Initially, the School District did not strictly enforce the "one seat per student" policy and instead provided bussing for C.W. to and from both parents' residences during the 2010-11 and 2011-12 school years.

In the summer of 2012, the School District notified Father that it intended to enforce the new transportation policy, and although there was an available seat on an existing bus route with an established stop servicing Father's home, the School District would only transport C.W. to and from Mother's residence, as her address was listed as the default address on C.W.'s school paperwork. Because of Father's work schedule, he had to hire a nanny to drive C.W. to Mother's house so that C.W., a seventh-grader, did not have to walk over 1.9 miles to his bus stop. Father sent several letters to the School District and attended a school board meeting voicing his objection to the transportation policy, all to no avail. Subsequently, Father instituted the instant action seeking, *inter alia*, preliminary and permanent injunctive relief to require the School District to provide transportation to and from both residences.

Father rested his complaint on Section 1361(1) of the School Code, which states, in relevant part:

> The board of school directors in any school district may, out of the funds of the district, provide for the free transportation of any resident pupil to and from the kindergarten, elementary school, or secondary school in which he is lawfully enrolled . . . .

24 P.S. § 13-1361(1) (Provide free transportation).[2] Father argued that Section 1361(1) sets forth a statutory mandate which generally provides students with transportation to and from school to a pupil's residence, and where, as here, C.W. is a "resident pupil" of two residences, transportation to both must be provided. In response, the School District argued that a student may have only one residence for purposes of the School Code and therefore Section 1361(1) required only that the School District provide

---

[2]    Because of the prolix statutory sections involved in this case, we will offer a parenthetical after each cited section to aid the reader in maintaining clarity.

transportation to that one residence. Alternatively, the School District asserted that it had discretion to limit C.W.'s transportation to and from one residence.

The trial court found for Father, determining that because C.W. resided with both parents equally, the School District is statutorily required to provide transportation for C.W. to and from both parents' homes, pursuant to Section 1361(1). The court garnered support for its position from the Commonwealth Court's decision in Wyland v. West Shore Sch. Dist., 52 A.3d 572 (Pa. Cmwlth. 2012), which found that a student who is subject to a shared physical custody arrangement can be a resident pupil of two different school districts when each parent resides in one.

The trial court granted Father's request for a preliminary injunction and ordered the School District to resume transportation from Father's residence. Shortly thereafter, the trial court amended its order by granting a permanent injunction. The trial court limited its decision to the facts of this case, rendering it applicable only where: 1) both parents live in the same school district; 2) the student is subject to an equally-split, shared legal and physical custody agreement; and 3) a school bus already serves each residence and could accommodate the student without any further cost or adding an extra stop. The School District appealed to the Commonwealth Court.

The Commonwealth Court affirmed the trial court's grant of a permanent injunction. Watts v. Manheim Twp. Sch. Dist., 84 A.3d 378 (Pa. Cmwlth. 2014). Acknowledging that Section 1361(1) does not expressly state that a school district must provide transportation to and from a student's residence, the court determined that the General Assembly's use of the term "resident pupil" embodies the intention that transportation services be provided between the student's residence and school.

To determine whether a student may have more than one residence for transportation purposes, the Commonwealth Court initially found this Court's decision in

In re Residence Hearing Before Bd. of Sch. Dir., Cumberland Valley Sch. Dist., 744 A.2d 1272 (Pa. 2000) (Cumberland Valley), to be instructive. In Cumberland Valley, the Cumberland Valley School District argued that students who moved with their mother into a townhouse in the district to be closer to their private school, while father maintained a residence outside of the district, were not residents of the Cumberland Valley School District as contemplated by the School Code, citing 24 P.S. § 13-1301 ("Every child, being a resident of any school district, [between specific ages], may attend the public schools in his district . . . .") and 24 P.S. § 13-1302(a) ("A child shall be considered a resident of the school district in which his parents or the guardian of his person resides."). We rejected that argument and held that the term "resides" contained within Section 1302(a) "refers to a place where the custodial parent maintains a residence, and, contrary to the [school district's] view, it need not be a primary residence or domicile." Cumberland Valley, 744 A.2d at 1274.

The Commonwealth Court found additional guidance from its decision in Wyland, *supra*, which held that a student of separated parents who lived in two different school districts was a "resident pupil" of both school districts and entitled to transportation services from both school districts. Although recognizing that Cumberland Valley and Wyland did not address whether school districts must provide transportation to more than one residence within the same school district, the Commonwealth Court interpreted these cases as holding that "a child can have more than one residence for purposes of the School Code." Watts, 84 A.3d at 385. The Court reasoned that "[i]t therefore follows that where . . . a child has two residences within a school district, the school district must provide transportation services accommodating both residences." Id. at 386.

As the School District conceded that C.W. is a "resident pupil" to whom the School District owes a duty of transportation and the court determined that C.W. has two residences within the district, the Commonwealth Court found that the School District must provide transportation accommodating both residences, and that, pursuant to the School Code, accommodating Mother's and Father's residences requires a bus stop no further than 1 ½ miles from each house. See 24 P.S. § 13-1362 (Distance to bus stop).[3] Because the bus stop within 1 ½ miles of Mother's residence is more than 1 ½ miles from Father's residence, the Commonwealth Court concluded that the School District violated its mandate to provide transportation to and from school to C.W.'s residences.

Lastly, the Commonwealth Court rejected the School District's argument that it had the discretion to limit C.W.'s transportation to and from Mother's residence only. In the Commonwealth Court's view, the School District has discretion to determine the manner in which it implements transportation services, but not to ignore the statutory mandate of the School Code, which, as explained, required that transportation be provided to school from both of C.W.'s residences.

The School District sought this Court's discretionary review, and we granted its petition for allowance of appeal to address two issues:

> (1) Does the Public School Code of 1949 require the Manheim Township School District to provide transportation services to a resident pupil to and from more than one location within the school district?

> (2) Did the Commonwealth Court err in interpreting In re Residence Hearing Before Bd. of Sch. Dir., Cumberland Valley Sch. Dist., 560 Pa. 366, 744 A.2d 1272 (Pa. 2000), to mean that a child can have more than one residence for

---

[3]    For full text of 24 P.S. § 13-1362, see infra at 9 n.7.

> school purposes, including transportation services under
> Section 1361 of the Public School Code of 1949?

Watts v. Manheim Twp. Sch. Dist., 99 A.3d 532 (Pa. 2014).

The School District argues that a student may not have more than one residence under the School Code as a matter of law, and therefore it properly limited C.W.'s transportation to and from Mother's residence only. Rather than analyzing sections of the School Code to support this contention, the School District simply asserts that no section of the School Code mandates it to provide transportation to multiple residences and then turns to a discussion of the case law relied on by the Commonwealth Court to decide the instant case, and in particular, this Court's decision in Cumberland Valley.

The School District contends that the Commonwealth Court in Wyland, and consequently in this case, misinterpreted this Court's holding in Cumberland Valley by reading that case as establishing that a student may have more than one residence under the School Code. Instead, the School District argues, Cumberland Valley merely defined the term "resides" and never reached the question of whether a student may reside in more than one residence. The School District believes that because we did not affirmatively state that a student may have more than one residence in Cumberland Valley, it follows necessarily that a student may not have more than one residence.

The School District alternatively argues that even if a student may have more than one residence under the School Code, the School District has the discretion to limit a student's transportation to and from only one of the residences. In support, the School District contends that the case law analyzing Section 1361(1) (Provide free transportation) consistently defers to a school district's broad discretion.[4] Although the cases cited by the School District involved the location of bus stops and not whether a

---

[4]     See supra at 3 for the full text of Section 1361(1).

school is required to provide transportation to multiple residences, the School District, without analysis, purports it has the discretion to decide both where bus stops will be placed and whether the School District has to provide transportation to more than one residence.[5]

The School District finds that Section 1331, which appears to be facially inapplicable,[6] supports its discretion argument as it provides that where there is:

> no public school with the proper grades in session within two miles by the shortest public highway of the residence of any child in a school district of [a specified class], such child shall be furnished proper transportation at the expense of the school district to and from a school with the proper grades.

24 P.S. § 13-1331 (Mandatory transportation). The School District claims that because of the phrase "proper transportation," school boards have total discretion in making all transportation decisions and that "courts have consistently interpreted Section 1331 [where applicable] to mean that school boards retain the ability to exercise their

---

[5]    See School District's Brief at 34-35 (citing Chipman ex rel. Chipman v. Avon Grove Sch. Dist., 841 A.2d 1098 (Pa. Cmwlth. 2004) (finding that Section 1361(1) did not require a school district to discontinue its use of transfer stations for non-public school students); Morningstar v. Mifflin Cnty. Sch. Dist., 760 A.2d 1221 (Pa. Cmwlth. 2000) (holding a school district properly denied a parent's request to reestablish a student's bus stop in front of her house); and Quasti v. N. Penn Sch. Dist., 907 A.2d 42 (Pa. Cmwlth. 2006) (finding that a school district had broad discretion in affixing bus routes and the paths which students were required to walk to reach their bus stops)).

[6]    It appears that the School District does not fall under Section 1331 which applies only to students living in

> a school district of the fourth class, or in a township which is a school district of the third class, or in a borough which has a population of less than five hundred (500) inhabitants to the square mile and which is a school district of the third class . . . .

24 P.S. § 13-1331; see also 24 P.S. § 2-202 (designation of classes of school districts); and https://www.mtwp.net/about/district-demographics/ (setting forth the School District's geographic size and population).

discretion in determining what constitutes 'proper transportation.'" School District's Brief at 32 (citing Martin v. Garnet Valley Sch. Dist., 272 A.2d 913 (Pa. 1971) (holding a school district properly exercised its discretion when it required a student to walk less than a mile on a windy road to the bus stop); Pollock v. Northern Potter Joint Sch. Bd., 9 Pa. D. & C.3d 31 (1976) (finding that the School Code did not require door-to-door transportation for a student)).

Turning to additional sections of the School Code to support its claim that it has discretion to decline transportation for a resident pupil to one of his two residences, the School District notes that it has the authority to require a student to walk up to 1 ½ miles to a bus stop. 24 P.S. § 13-1362 (Distance to bus stop).[7] Here, the School District concedes that C.W.'s bus stop is within 1 ½ miles of Mother's residence but nearly 2 miles from Father's house. Notwithstanding that the bus stop within 1 ½ miles of Mother's residence does not meet the 1 ½ mile restriction when C.W. is living at Father's house, the School District submits that Father is required merely to drive to the

---

[7]    Section 1362 states in relevant part:

> The free transportation of pupils, as required or authorized by this act, or any other act, may be furnished by using either school conveyances, private conveyances, or electric railways, or other common carriers, when the total distance which any pupil must travel by the public highway to or from school, in addition to such transportation, does not exceed one and one-half (1 ½ ) miles, and when stations or other proper shelters are provided for the use of such pupils where needed, and when the highway, road, or traffic conditions are not such that walking constitutes a hazard to the safety of the child, as so certified by the Department of Transportation.

24 P.S. § 13-1362.

bus stop serving Mother's residence. Accordingly, the School District concludes that this construct constitutes "proper transportation."

In addition to the School Code, the School District cites the State Board of Education's regulations[8] as conferring discretion upon the School District to provide transportation to only one residence. Particularly, the School District points to 22 Pa. Code § 23.4, which states the "board of directors of a school district is responsible for all aspects of pupil transportation programs" including, *inter alia*, the selection of means of transportation and the establishment of routes and schedules. Further, the School District finds support in the regulatory Section 11.11 which sets forth that "[t]ransportation for students must be provided consistent with the policy of the school district that the students are attending." 22 Pa. Code § 11.11(a)(2) (Enrollment Regulation).

Lastly, the School District does not believe that it abused its purported discretion here because the changes "help conserve and better allocate limited public funds." School District Brief at 38. The School District finds it absurd and unreasonable to assert that the General Assembly intended it to bear the additional cost of providing "enhanced" transportation to some students merely to accommodate their "parents' particular domestic circumstances." Id. at 43.[9]

---

[8]    22 Pa. Code §§ 1.1 – 23.40.

[9]    The Pennsylvania School Boards Association ("*Amicus*") filed an *amicus* brief in support of the School District's position. *Amicus* argues that the School Code and its regulations contain an unwritten "Single Residency Rule," which limits a student to only one residence. Additionally, *Amicus*' brief echoes the School District's argument that this decision was consistent with the School District's discretion in "adopting transportation policies and procedures to ensure the health, safety and welfare of all students in a reasonable manner, while maintaining fiscal responsibility." *Amicus* Brief at 20.

In response, Father argues that the School Code, and the case law interpreting it, mandates that the School District provide transportation to both residences here. Father posits that, although Section 1361(1) (Provide free transportation) does not specify the origination point of transportation to be provided "to and from . . . school," the only logical interpretation of Section 1361(1) is that the transportation is to be provided from a student's residence (or a bus stop within 1 ½ miles thereof) to the student's school and back. Father asserts that as C.W. is a "resident pupil" of both parents' residences, the School District must provide transportation to and from both residences.

Father submits that the School District's interpretation of Section 1361(1) is impermissible because it is contrary to the legislature's intent, which he believes is embodied in Section 1327 and the exceptions thereto. See 24 P.S. § 13-1327(a) (Compulsory attendance) (stating "every child of compulsory school age having a legal residence in this Commonwealth . . . is required to attend a day school"). Because certain classes of school districts cannot compel attendance if they do not provide transportation to their students who live more than two miles from their school, see 24 P.S. § 13-1330(5) (Exceptions to compulsory attendance),[10] Father finds the purpose

---

[10]     Section 1330(5)'s full text reads as follows:

> The provisions of this act requiring regular attendance shall not apply to any child who –
>
> * * *
>
> (5) Except in districts of the fourth class and those of the third class located wholly within the boundary lines of a township, or within the boundary lines of a borough which has a population of less than five hundred (500) inhabitants to the square mile, resides two miles or more by the nearest public highway from any public school in session and no proper free transportation is furnished to such child to and from school.

(…continued)

behind providing transportation is to compel attendance. Additionally, Father highlights that those classes of school districts not included in the compulsory attendance exception are mandated to provide transportation to students who live more than two miles from school. See 24 P.S. § 13-1331 (Mandatory transportation), full text supra at 8. Father offers that if we accept the School District's argument here, then the purpose behind the transportation provisions will only be accomplished half of the time; C.W. will only be compelled to attend school during Mother's periods of physical custody but not when he is living with Father.

In response to the School District's alternative argument that its policy is within its discretion to determine what is "proper transportation," Father argues that the cases the School District relies upon, see supra at 8-9, are inapposite, contending that in citing Martin and Pollock, the School District fails to recognize that these cases only involved the manner of transportation services and not whether the school districts at issue were required to provide transportation in the first instance as is the question here. Thus, Father asserts that the School District only has discretion to decide the manner of transportation, not whether there will be transportation at all.

Father next posits that even assuming *arguendo* that the School District has discretion to decide whether to provide transportation to more than one residence, providing transportation only half of the time is not "proper transportation." Similarly, Father advances, requiring a student to walk nearly two miles to a bus stop within 1 ½ miles of Mother's residence would be an abuse of discretion, as it exceeds the 1 ½ mile limit set forth in Section 1362 (Distance to bus stops) when C.W. is at Father's residence.

---

(continued…)
24 P.S. § 13-1330(5).

Lastly, in response to the School District's argument that its changes to the transportation policy were necessary to conserve public funds, Father argues that the cost to the School District is irrelevant. To the extent that the School District's budget is relevant, Father points out that the bulk of the School District's savings likely stemmed from eliminating transportation to locations other than residences, as only 50 to 75 of 400 students were transported to multiple residences.[11]

In this case, we are reviewing the trial court's grant of a permanent injunction, pursuant to agreed-upon facts, and therefore we must determine whether the trial court committed an error of law, for which our standard of review is *de novo* and our scope of review is plenary. Buffalo Twp. v. Jones, 813 A.2d 659, 663-64 (Pa. 2002). In order to establish a claim for a permanent injunction, the party must establish his or her clear right to relief. Id. at 663. As Father's request for a permanent injunction rests upon a purported mandate within the School Code, this case presents a matter of statutory interpretation. The objective of all interpretation and construction of statutes is to ascertain and effectuate the legislative intent behind the statute. 1 Pa.C.S. § 1921(a). When the plain language of a statute is clear and free from all ambiguity, it is the best

---

[11] We note that all school districts are required to file their budgets with the Pennsylvania Department of Education. See 24 P.S. § 2-218(a) ("An annual financial report shall be submitted to the Secretary of Education by each school district"). The School District has done so and placed its 2015-2016 budget online for public scrutiny, which shows expenditures of $86,528,116 expected for that school year. See http://www.mtwp.net/district/business-office/, Proposed Final 2015-2016 Budget PDE-2028. It is undisputed that the School District's modification to its transportation policy affected 400 students and saved approximately $200,000 per year. Of these 400 students, the School District eliminated stops to more than one residence for 50-75 students because of physical custody arrangements. Assuming that the appropriate number is 75 students and the savings are equal per student, this represents 19% of the 400 students and therefore $38,000 of the $200,000 in savings. This $38,000 equates to a savings of 0.04% or 4/100 of 1% of the School District's total 86.5 million dollar budget.

indication of legislative intent. 1 Pa.C.S. § 1921(b); see also Chanceford Aviation v. Chanceford Twp. Bd. of Supervisors, 923 A.2d 1099, 1104 (Pa. 2007).

When, however, the words of a statute are ambiguous, a number of factors are used in determining legislative intent, including the purpose of the statute and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c). Furthermore, "it is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute." Hoffman Mining Co., Inc., v. Zoning Hearing Bd. of Adams Twp., Cambria Cnty., 32 A.3d 587, 592 (Pa. 2011) (internal quotes and citation omitted); see also 1 Pa.C.S. § 1932 (statutes are considered to be *in pari materia* when they relate to the same persons or things, and statutes or parts of statutes *in pari materia* shall be construed together, if possible). Lastly, we presume that the legislature did not intend an unreasonable or absurd result. 1 Pa.C.S. § 1922(1).

Generally, courts are restrained when reviewing matters of school policy and "should not function as super school boards." Zebra v. Sch. Dist. of City of Pittsburgh, 296 A.2d 748, 750 (Pa. 1972). However, school boards do not have unfettered discretion; courts have authority to interfere when a school board's "action is based on a misconception of law, ignorance through lack of inquiry into facts necessary to form intelligent judgment, or the result of arbitrary will or caprice . . . ." Hibbs v. Arensberg, 119 A. 727, 728 (Pa. 1923). If such an abuse of discretion occurs, then it is amenable to the injunctive process, an equitable remedy in which the party seeking injunctive relief bears a heavy burden. Landerman v. Churchill Area Sch. Dist., 200 A.2d 867, 869 (Pa. 1964).

With these general principles in mind, we turn to the relevant statutory provisions of the School Code, which are contained within Article XIII, titled "Pupils and

Attendance."  First, we analyze the provisions governing transportation, beginning with Section 1361(1) (Provide free transportation).  Section 1361(1) states that "[t]he board of school directors in any school district may . . . provide for the free transportation of any resident pupil to and from the . . . school in which he is lawfully enrolled . . . ."  24 P.S. § 13-1361(1).  The School District does not dispute that it owes a duty of transportation to C.W. as a "resident pupil" based on Section 1361(1), as it has elected to provide transportation for its students.  The contested issue is what this duty of transportation entails, and specifically, whether it requires transportation to Father's residence.

Section 1361(1) (Provide free transportation) states that a student shall receive transportation "to and from" school.  By using the language "to and from" school, Section 1361(1) does not state where the transportation begins and where it ends.  As written, this portion of the statute could be construed to mandate transportation to and from school to wherever a student or his parent desires, whether this be his residence, daycare, or the front of the corner store.

Section 1361(1) itself, however, only applies to "resident pupils."  Thus, the duty to transport the student is trigged by his status as a resident of the school district, and necessarily his residence within the school district.  It would be illogical to hold that the transportation that is provided is from some location other than the student's residence.  As further support that transportation for purposes of 1361(1) must be to and from school to a student's residence, Section 1366 of the School Code sets forth how to compute any distance specified in the School Code.  Specifically, any distance calculated "between the residence of any pupil and any public school to be attended by him" must be computed by removing the distance between the student's "dwelling

house" and the public road. 24 P.S. § 13-1366 (Computation of distances).[12]

Therefore, the relevant distances in the School Code are based entirely on the student's residence. Thus, we conclude that when a school district elects to provide transportation pursuant to Section 1361(1) (Provide free transportation), the origination and termination point for the transportation is the student's residence.[13, 14]

Having established that Section 1361(1) transportation begins and ends at a student's residence, we must next determine whether a student may have more than one residence for transportation purposes, keeping in mind that the singular form of "residence" in Section 1366 (Computation of distances) is not dispositive. See 1

---

[12]    Section 1366 (Computation of distances) states in full:

> Where, by the terms of this act, or any other act, any distance is specified between the residence of any pupil and any public school to be attended by him, or any transportation is provided for within or beyond any particular distance, in computing such distance no allowance shall be made for the distance that the dwelling house of the pupil is situated off the public highway. All such distances shall be computed by the public highway from the nearest point where a private way or private road connects the dwelling house of the pupil with the highway to the nearest point where said highway touches the school grounds of the school to which the pupil has been assigned.

24 P.S. § 13-1366.

[13]    This does not preclude a school district from providing transportation to locations other than a residence, but such transportation is not mandated by Section 1361(1).

[14]    We acknowledge that when a school district is required to provide transportation to a student's residence, this transportation requirement does not entail door-to-door transportation directly to a student's residence. Rather, Section 1362 permits a school district to provide transportation to a bus stop within 1 ½ miles of a student's residence. See 24 P.S. § 13-1362 (full text at supra 9 n.7). However, for ease of discussion, we will refer to the location of a student's disembarkment from the school bus as his residence.

Pa.C.S. § 1902 (providing that when interpreting statutes "[t]he singular shall include the plural, and the plural, the singular."). As Section 1361(1) does not address the question before us, we look to other sections of the School Code and its regulations. We begin by reviewing the provisions dealing with enrollment, a matter that is intrinsically linked with residency.

Section 1301 establishes that "[e]very child, being a resident of any school district, [between specific ages], may attend the public schools in his district . . . ." 24 P.S. § 13-1301. The immediately following provision defines "resident" – "A child shall be considered a resident of the school district in which his parents or the guardian of his person resides." 24 P.S. § 13-1302(a). Section 1302 does not explicitly contemplate a student whose parents do not live together. In 2004, the State Board of Education addressed this issue when it enacted Section 11.11(a) (Enrollment Regulation) of the regulations, which reads in relevant part:

§ 11.11. Entitlement of resident children to attend public schools.

(a) Entitlement.

(1) A school age child is entitled to attend the public schools of the child's district of residence. A child's district of residence is that in which the parents or the guardian resides. When the parents reside in different school districts due to separation, divorce or other reason, the child may attend school in the district of residence of the parent with whom the child lives for a majority of the time, unless a court order or court approved custody agreement specifies otherwise. If the parents have joint custody and time is evenly divided, the parents may choose which of the two school districts the child will enroll for the school year. . . .

(2) Transportation for students must be provided consistent with the policy of the school district that the students are attending.

22 Pa. Code § 11.11(a).

By giving parents a choice between two school districts when the parents "have joint custody and time is evenly divided,"[15] Section 11.11(a)(1) recognizes that a student can be considered a resident of both school districts and therefore have two residences. Obviously, it would be absurd to require, or even permit, a student to attend two school districts during alternating weeks. Hence, the regulation requires a student's parents to choose one or the other district. The fact that a student must ultimately enroll in only one school district does not detract from the reality that he may reside in two locations.[16] Thus, Section 11.11(a)(1) establishes that where the parents have shared physical custody of a student, that student has two residences for enrollment purposes.

---

[15] While the School Code and the child custody statute, 23 Pa.C.S. §§ 5301 – 5366, do not provide a definition of "joint custody," the term is synonymous with "shared custody." In re Wesley J. K., 445 A.2d 1243, 1247 (Pa. Super. 1982). Under the child custody statute, shared custody is defined as follows:

> **"Shared physical custody."** The right of more than one individual to assume physical custody of the child, each having significant periods of physical custodial time with the child.

23 Pa.C.S. § 5322.

Additionally, we note that the child custody statute does not provide a definition for or any reference to "evenly divided time." It is not clear whether this phrase is limited to circumstances where each parent has exactly fifty percent of the child's time, or whether it means something less technical, similar to the definition of shared custody. However, because the parents here each have exactly fifty percent of C.W.'s time, it is unnecessary for us to analyze this distinction any further to decide this case. Thus, we leave such question for another day when it is directly before us, replete with briefing and oral argument.

[16] Accordingly, we disagree with *Amicus*', The Pennsylvania School Boards Association, argument that because Section 11.11(a)(1) has the effect that a student may enroll in only one school district, the regulation necessarily implies that a student may only have one residence, a concept that *Amicus* terms the "Single Residency Rule."

Although Section 11.11(a)(1) informs our decision, its primary focus is enrollment and not transportation. Additionally, it involves choosing between two different school districts, which is not at issue here. To determine whether a choice between two residences within the same school district for transportation purposes is necessary, we review the purpose behind the statutory provisions relating to transportation, which we find within the sections regarding transportation in the "Enforcing attendance" section of Article XIII. See Article XIII (b) of the School Code.

Within Article XIII (b) of the School Code, Section 1327(a) sets forth that "every child of compulsory school age having a legal residence in this Commonwealth . . . is required to attend a day school." 24 P.S. § 13-1327 (Compulsory attendance). The School Code then provides that compulsory school attendance does not apply to a student who "resides two miles or more by the nearest public highway from any public school in session and no proper free transportation is furnished to such child to and from school." 24 P.S. § 13-1330(5) (Exceptions to compulsory attendance); see supra at 11-12 n.10 for full text.[17] Necessarily, then, the purpose behind school-provided transportation is to facilitate students' attendance. Logically, if students reside far from their school, the legislature has decided that a school district cannot mandate a student's attendance unless transportation is provided.

---

[17] The Section 1330(5) exception does not apply to students who reside in school districts of "the fourth class and those of the third class located wholly within the boundary lines of a township, or within the boundary lines of a borough which has a population of less than five hundred (500) inhabitants to the square mile." Id. The immediately following provision, Section 1331 (Mandatory transportation), applies to those school districts excluded from the Section 1330(5) exception, and requires those school districts to provide transportation or lodging to its students who reside more than two miles from their respective schools. See 24 P.S. § 13-1331.

Choosing between two residences within a school district for transportation purposes is qualitatively different from choosing which district to enroll in because, as this case illustrates, a student may logically maintain two residences within the same school district. Here, Mother and Father share legal and physical custody, with C.W. spending alternate weeks with each parent. Under these circumstances, we conclude that the legislature and the Department of Education intended for the School District to provide transportation to both residences in order to further the goal of compulsory attendance. Accepting the School District's counter-argument, moreover, would tend to undermine the purpose behind the statute (mandatory attendance) as during the time C.W. resides with Father, which is half of his time, he would not be required to attend school given that Father lives more than two miles from C.W.'s school and the School District is refusing transportation. See 24 P.S. § 13-1330(5) (Exceptions to compulsory attendance). Thus, the School District's view that providing transportation from Father's residence is merely "enhanced" transportation is erroneous: transportation for half of the year is anything but enhanced, and, in fact, it is necessary to compel attendance.

Additionally, utilizing the same logic, we reject the School District's argument that whether to provide transportation to Father's residence is a decision that falls within its broad discretion. The School District does not have the discretion to decide whether to provide transportation for half of the time C.W. should be in school.

Moreover, the School District concedes that it cannot require C.W. to walk more than 1 ½ miles to his bus stop, pursuant to Section 1362 (Distance to bus stops), yet it asserts that it can require Father to drive more than 1 ½ miles to the bus stop. The School District cannot avoid a statutory prohibition by requiring a parent to drive where it cannot require a student to walk.

In closing, we note our holding is consistent with the purpose of the School Code, which we have stated is:

> to provide all children residing within the Commonwealth with a good common school education. In carrying out this purpose the various school districts are merely the agents of the Commonwealth. In construing the school laws, therefore, that interpretation will be adopted which will be more likely to carry into effect this generous purpose. The child is the paramount object of our common school law. His education, and not the exact apportionment of its cost among various subdivisions of the Commonwealth, is its chief concern.

Harris v. Bd. of Pub. Educ. of Sch. Dist. of Philadelphia, 160 A. 443, 444 (Pa. 1932) (internal quotes and citations omitted).[18]

For the reasons set forth above, we conclude that the School District must provide transportation from and to both Mother's and Father's residences because: when the School District elected to provide transportation to students' residences under Section 1361(1), it was required to do so to C.W.'s residence; C.W. has two residences by virtue of his parents' equally shared physical custody; there is no provision requiring parents to choose a residence for transportation purposes (in contrast to enrollment); and students cannot be required to travel more than 1 ½ miles from their residence to the bus stop. Accordingly, we hold that the trial court properly granted Father's

---

[18] Although the concurring opinion's concern for school districts' budgets is understandable, a rule requiring school districts to provide transportation to a student's two residences only when such transportation is not an "administrative burden" to the school district is not supported by the School Code as written. As set forth at length above, this decision required us to conduct statutory interpretation. Interpreting the statute is not the same as broadening the statute. We have not added any language nor have we expanded the plain language of the School Code. As we should, we leave it to the legislature to determine whether adding an "administrative burden" consideration is appropriate.

permanent injunction because the School District here is mandated to provide C.W. with transportation to and from school to both of his residences. [19]

Based on the foregoing, the Order of the Commonwealth Court is affirmed.

Mr. Justice Eakin and Madame Justice Todd join the opinion.

Mr. Chief Justice Saylor files a concurring opinion.

Mr. Justice Stevens files a dissenting opinion.

---

[19] As noted in the recitation of the issues raised on appeal, we also granted allowance of appeal to address the propriety of the lower courts' reliance on our prior decision in Cumberland Valley. As demonstrated above, however, we have determined that C.W. has two residences without the need to analyze or rely on Cumberland Valley. Accordingly, we find it unnecessary to reach the question presented in the second issue raised on appeal.